PEOPLE v CLARK

1. CRIMINAL LAW—EVIDENCE—PRIOR ACTS—PREJUDICE—PROBATIVE
VALUE—DISCRETION.

It is within the discretion of the trial court to determine whether
the unfair prejudice or confusion which may result from admis-
sion of evidence of a criminal defendant's prior acts outweighs
the probative value of that evidence.

2. CRIMINAL LAW—WITNESSES—EVIDENCE—PRIOR ACTS—DEFENDANT'S
SCHEME OR PLAN—STATUTES—INSTRUCTIONS TO JURY.

A witness in a trial for rape and armed robbery was properly
allowed to testify that the defendant had raped her on a prior
occasion where the similarity of the two rapes was sufficient to
bring the testimony within the statute which allows introduc-
tion of evidence to show the defendant's scheme, plan, or
system in doing the act, and the judge gave cautionary instruc-
tions to the jury on the use of the testimony both prior to the
witness's testimony and as part of his charge (MCLA 768.27).

3. CRIMINAL LAW—EVIDENCE—PRIOR ACTS—ORDINANCE VIOLATIONS—
MISDEMEANORS—DEFENDANT'S SCHEME OR PLAN—STATUTES.

The use of municipal ordinance or misdemeanor convictions for
impeachment purposes is prohibited, but such convictions may
be used to show a defendant's scheme, plan or system of doing
an act (MCLA 768.27).

4. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—PRIOR ACTS—MISDE-
MEANORS.

Introduction by the prosecutor, in a trial for rape and armed
robbery, of the contents of a transcript of a guilty-plea proceed-
ing in which the defendant had pled guilty to an unrelated
misdemeanor of assault was error where the prosecutor's pur-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 585.
    Court's right, in imposing sentence, to hear evidence of, or to
    consider, other offenses committed by defendant. 96 ALR2d 768.
[2, 3] 29 Am Jur 2d, Evidence §§ 322, 326.
[4, 6] 30 Am Jur 2d, Evidence § 1175.
[5, 6] 5 Am Jur 2d, Appeal and Error § 799.

pose was to impeach the defendant, who had denied the incident.

5. CRIMINAL LAW—APPEAL AND ERROR—PREJUDICE—HARMLESS ERROR —STANDARD OF REVIEW.

The standard of review for determining whether an error is so prejudicial as to require a new trial is: first, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless, and, second, if not so basic, can the reviewing court declare a belief that the error was harmless beyond a reasonable doubt.

6. CRIMINAL LAW—EVIDENCE—PRIOR ACTS—IMPEACHMENT—MISDEMEANORS—HARMLESS ERROR.

The erroneous introduction into evidence of a defendant's prior conviction of a misdemeanor, for purposes of impeachment of the defendant's testimony, was harmless error where this evidence would have been admissible to show the defendant's scheme, plan, or system, and the other evidence against the defendant was overwhelming.

Appeal from Recorders Court of Detroit, Joseph A. Gillis, J. Submitted May 12, 1975, at Detroit. (Docket No. 22274.) Decided July 23, 1975.

Ronald T. Clark was convicted of rape and armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people.

*Leonard Townsend,* for defendant on appeal.

Before: T. M. BURNS, P. J., and M. F. CAVANAGH and O'HARA,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

M. F. Cavanagh, J. The defendant was convicted in a jury trial of rape, MCLA 750.520; MSA 28.788, and armed robbery, MCLA 750.529; MSA 28.797. He was sentenced to two concurrent life imprisonment terms and now appeals as of right.

The defendant contends that the trial court committed reversible error in allowing another alleged rape victim to testify as to a prior occurrence involving the defendant and in allowing the prosecutor to read a guilty plea transcript in which the defendant admitted committing an assault and battery on another woman.

The trial judge allowed a witness to testify that the defendant had raped her on a prior occasion under MCLA 768.27; MSA 28.1050, which states as follows:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

The defendant argues on appeal that the use of this statute was misplaced since intent is not an element of forcible rape. This argument ignores the fact that separate acts by the defendant may be introduced to show "the defendant's scheme, plan or system in doing the act".

Our review of the record convinces us that the witness's testimony was properly admitted since the two acts were so similar as to show a common

scheme. The two sexual attacks demonstrate a single *modus operandi.* First, the attacks occurred in the same neighborhood of Detroit. They both occurred at approximately 9:30 p.m. to 10 p.m. The method for overpowering the two women was the same: the perpetrator approached them from behind and put a pistol to their heads. The women were then forced to accompany him to a vacant house. The two vacant houses used were located within two blocks of each other. At both locations, the defendant broke through a window to gain entrance.

The sex acts forced upon the two women were also similar. Once inside, both women were ordered under threat of violence to remove their clothing. The defendant then forced both women to perform fellatio upon him and then to have intercourse with him. Afterwards, the defendant robbed the present complainant of a watch, some cash, and the stenographic machine which she had been carrying home from school. The other witness testified that after she had been raped, she managed to escape. Both women clearly identified the defendant as the perpetrator of the sexual attacks.

The trial judge gave cautionary instructions to the jury prior to the witness's testimony and as part of his charge. During his final instructions, the judge informed the jury that testimony by the witness could only be used to establish the defendant's identity because of the characteristic method or scheme of the two acts.

It is within the discretion of the trial court to determine whether the unfair prejudice or confusion which may result from admission of evidence of prior acts outweighs the probative value of that evidence. *People v DerMartzex,* 390 Mich 410; 213

NW2d 97 (1973). *People v Duncan,* 55 Mich App 403; 222 NW2d 261 (1974). We recognize that the danger of prejudice may be especially present in sex offenses and that a trial court may have to scrutinize the similarities in the two acts carefully for a common scheme. But in this case, the parallels between the two acts, from the method of overpowering the women and the time and location to the particular nature of the sex act, were striking. The introduction of the witness's testimony was relevant to the determination of the identity of the perpetrator and was not erroneous. Two Michigan cases, also involving robbery and rape, support this conclusion by allowing evidence of strikingly similar acts under MCLA 768.27; MSA 28.1050. *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971). *People v Davis,* 46 Mich App 80; 207 NW2d 419 (1973).

As to the second issue raised in this appeal, the defendant, prior to testifying, moved to exclude reference to his prior record. The prosecution explained that it planned, *inter alia,* to ask the defendant about his assault and battery on a third woman under circumstances similar to the sexual assaults described above.

In this regard, the following colloquy occurred:

*"Mr. La Bret:* Now, I will tell the Court in front. I am going to ask him specifically about these acts, and I think I am entitled to because that would go under plan, scheme, the same modus operandi, and *I am prepared to bring these people in to court if he denies this.* (Emphasis added.)

*"The Court:* Well, the criminal record will not be admitted on the misdemeanor.

*"Mr. La Bret:* But I can ask him about that particular incident.

*"Mr. Murphy:* I don't think he can, your Honor. That's using it—That's the same—That's even worse

than using the misdemeanor conviction because then he's going into the details of the conviction.

*"The Court:* He doesn't have to say it was a conviction or even that it went to court.

*"Mr. Murphy:* That's particularly a prior bad act, your Honor.

*"The Court:* But it might show a common scheme."

And further:

*"Mr. La Bret:* I am asking your client questions. *If he lies, I'm going to bring the witnesses in."* (Emphasis added.)

Defense counsel then objected to this threatened procedure as being impeachment on a collateral matter and thus improper. The court specifically stated repeatedly at this juncture that this was not for impeachment purposes but solely for showing a common plan and scheme. Thereafter, upon receiving from the defendant a negative response to his question as to whether he had ever assaulted a woman in a vacant house, the prosecutor presented the defendant with a copy of his assault and battery guilty plea transcript to refresh his recollection. The following exchange then ensued:

*"Q.* Does this refresh your recollection?

*"A.* Yes.

*"Q.* Do you want to tell the jury the truth?

*"A.* I'm telling them the truth.

*"Q.* You mean you never assaulted a person by the name of Sharon Smith on September 3, 1971, at 7694 Sherwood, in the City of Detroit?

*"A.* No.

*"Q.* You never did?

*"A.* No.

*"Mr. Murphy:* Objection; asked and answered and irrelevant.

"*Q.* Did you ever admit to anybody you did?
"*A.* No."

Again, for the stated purpose of showing a common scheme the court allowed the prosecutor over objection to continue questioning the defendant about this assault and another incident. The defendant remained steadfast in his denial of commission and/or admission.

Outside of the presence of the jury, the prosecutor then informed the court that it intended to call as a witness Glenn Rose, an official court reporter for Detroit Recorder's Court, to testify as to the content of the misdemeanor transcript. Over defendant's objection, the trial court allowed the testimony. Mr. Rose then read the transcript of the defendant's guilty plea, which stated in pertinent part:

"*The Court:* You have heard your attorney offer a plea of guilty that on September 3, 1971, at 7694 Sherwood in the City of Detroit, in that vacant house you did commit assault upon Sharon Smith and touch her unlawfully.

"Do you concur and agree with your attorney's offer of a plea of guilty?
"*The Defendant:* Yes."

\* \* \*

"*The Court:* Why are you pleading guilty?
"*The Defendant:* Because I am guilty."

After Mr. Rose's testimony, the trial court instructed the jury that the statement was to be used solely for the purpose of impeachment.

In the recent case of *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), the Michigan Supreme Court held that the use of municipal ordinance or misdemeanor convictions for impeachment pur-

poses is prohibited. *Renno,* however, stated that such convictions may be used under MCLA 768.27; MSA 28.1050. In *Renno* the prosecutor during cross-examination repeatedly questioned the defendant concerning the details of a guilty plea to the municipal ordinance charge of drunk and disorderly. The defendant admitted the conviction but denied the prosecutor's assertion that the charge stemmed from an incident in which he had beaten up his wife.

No question of the retroactivity of *People v Renno* is involved in this case since the trial in the present case took place four months after *Renno* was decided. *Cf. People v Phelps,* 57 Mich App 300; 225 NW2d 738 (1975).

*Renno* clearly would have allowed this misdemeanor to be used if the similarities were sufficient under the common plan statute. This Court is rather perplexed as to why the prosecutor failed to produce the victim of this assault in his case in chief inasmuch as he stated several times that he was prepared to bring this witness in. He apparently chose not to and elected to attempt to show the similarity of this assault through the defendant's own admission.

When the defendant denied this incident, the prosecutor abandoned his efforts to show a common plan. The prosecutor's impeachment of this denial by use of the misdemeanor guilty plea transcript became the sole, paramount purpose and this was not proper. Having chosen not to call the victim for direct testimony, he was bound by the defendant's answer. The ensuing impeachment was collateral, impermissible and unnecessary. See *People v Foley,* 299 Mich 358; 300 NW 119 (1941), *People v MacCullough,* 281 Mich 15; 274 NW 693 (1937), and *People v Renno, supra.*

While the rebuttal testimony concerning the defendant's misdemeanor guilty plea was erroneously admitted, we must determine whether this error is sufficiently prejudicial to require a new trial. The Michigan Supreme Court in *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972), is instructive on the proper standard:

" 'First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * * Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?' "

We conclude that the application of these standards results in the conclusion that the rebuttal testimony was harmless in the context of this case. Although it is unnecessary to decide the issue, the circumstances of the assault of Sharon Smith are compelling that the evidence would have been admissible under the common plan statute. The defendant assaulted Ms. Smith in a vacant house at 7694 Sherwood Street in Detroit. He was originally charged with assault with intent to commit gross indecency, but negotiations with the prosecutor resulted in a guilty plea to the misdemeanor, assault and battery.

In addition to the relatively minor nature of the error, the evidence against the defendant was overwhelming. The complainant described the events of the evening of May 1, 1974, in great detail. The striking similarities between this occurrence and one a few months earlier with another woman have been noted. At trial, both women made an unwavering identification of the defendant as the perpetrator. Finally, several members of the police evidence laboratory testified that the defendant's fingerprints were found on a piece of

glass at the vacant house where the criminal offense of this case took place.

A review of the entire record in this cause shows an abundance of proof of the defendant's guilt, including the corroborating testimony of a prior victim, fingerprints, and the overall incredulity of the defendant's own testimony. Accordingly, we hold this error to be harmless. *People v Heard,* 58 Mich App 312; 227 NW2d 331 (1975).

Affirmed.