PEOPLE v GIBSON

PEOPLE v BRADFORD

1. CRIMINAL LAW—CONSTITUTIONAL LAW—ARREST—PROBABLE CAUSE
   —POLICE REPORTS—CONCEALMENT—WEAPONS.

There was sufficient probable cause for police officers to arrest
two suspects for attempted armed robbery where the police
were called to the scene of the arrest by a radio report that a
robbery was feared, the license plate of the defendants' vehicle
at the scene was covered by a rag, and one of the suspects,
when ordered to halt, momentarily concealed himself in an
area where a pistol and an unaccounted-for credit card were
subsequently found.

2. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT OF PRIVACY—
   SEARCHES AND SEIZURES—AUTOMOBILES—PUBLIC STREETS—CON-
   TRABAND—PROBABLE CAUSE—VALID ARREST—EVIDENCE—ADMIS-
   SIBILITY.

There is no reasonable expectation of privacy in goods lying on
the back seat of a car parked on a public street, and where
police, subsequent to a valid arrest, had probable cause to
believe that the suspects had been involved in an earlier
robbery, and that contraband from that earlier robbery was
present in their car, they had the right to look through the
car's windows and to search it and seize the contraband inside
and such evidence was properly admissible at trial.

3. CRIMINAL LAW—EVIDENCE—OTHER CRIMES—ADMISSIBILITY—MO-
   TIVE—INTENT—DESIGN—COMMON SCHEME—STATUTES.

Evidence which tends to show that a defendant has committed
crimes other than those charged is generally inadmissible at
trial except where other acts of the defendant may tend to
show his motive, intent, the absence of mistake or accident on
his part, or the defendant's scheme, plan or system in doing the
act in question (MCLA 768.27; MSA 28.1050).

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 157–159.
[2] 5 Am Jur 2d, Arrest §§ 24, 32.
[3] 21 Am Jur 2d, Criminal Law §§ 82, 83, 86.

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted November 5, 1975, at Detroit. (Docket Nos. 22398, 22448.) Decided January 7, 1976.

Mark Gibson and Hillman Bradford, Jr., were convicted of armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Barry J. Siegel,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant Gibson.

*McCallum & Ziolkowski,* for defendant Bradford.

Before: D. E. HOLBROOK, P. J., and J. H. GILLIS and M. J. KELLY, JJ.

J. H. GILLIS, J. Defendants were charged with armed robbery, MCLA 750.529; MSA 28.797. On October 15, 1974, a jury convicted each defendant of the charged offense. Both were sentenced to a term of imprisonment from which they now appeal.

On Sunday, April 28, 1974, at approximately 2:45 p.m., an automobile occupied by two men pulled up to an apartment house in the northwest section of Detroit. The vehicle was parked a few feet from one of the units occupied by three women. One of the unit occupants was in the process of closing the draperies when she noticed two black men emerge from an old tan-colored Valiant automobile and enter the apartment build-

ing. In response to a knock, the women looked through a peephole in the door and observed the two men standing there. The women declined to open the door and the men then went upstairs to another apartment.

Shortly thereafter two of the women went outside and one of them jotted down the license number, NKV 610, of the car in question. Upon learning the following day that an upstairs resident, Richard Sander, had been robbed, the occupants turned over the license number to the victim.

Shortly before 4 p.m. on the day of the robbery, a vehicle pulled into the Riviera Motel located in the northwest section of Detroit. The manager of the motel observed two black men get out of "an old Valiant", cover up the license plate with a handkerchief and then proceed towards the office of the motel. As they approached, they apparently saw that there were several people in the office and so they returned to their automobile and drove off in a northwesterly direction on Grand River Avenue. The manager of the Riviera Motel then called the manager of the Mt. Vernon Motel and described the events that had just transpired. At approximately the same time as the above conversation concluded, the manager of the Mt. Vernon Motel noticed an old vehicle with two black men in it pull onto an adjacent street and park. Observing one of them cover the license plate number, he quickly called the Detroit police to report the incident. He then locked the door. The men approached the office, tried the front door, found it locked, went to a side door and were unable to gain entrance. As they started back towards their automobile, a police car pulled in the motel driveway.

At trial, the policemen testified that they had received a "radio run" directing them to proceed to the Mt. Vernon Motel. They stated that the call informed them that "two suspicious black men" were at the motel, that they were driving a tan Valiant with a license number NKV 610, and that a "possible robbery was feared". When the officers pulled into the motel driveway, they noticed a parked Valiant on the street with its license plate covered by a handkerchief. At the same time, they saw defendants walking side by side from the motel office towards the Valiant. They ordered the men to stop and to raise their hands. Prior to their stopping, and parallel to a clump of bushes, one of the defendants suddenly ducked behind the other, concealing himself from the officers' view. Both men then walked to the police car.

While one of the officers questioned defendants, the other walked over to the clump of bushes and found a silver handgun and a credit card bearing the name of Richard Sander. He then returned to the police car. His partner informed him that defendants had given their names as Mark Gibson and Hillman Bradford, Jr., and that they had stated that they were returning to their car, the Valiant. The officers then walked to defendants' car, looked through the window, and observed a large jar of coins, a set of stereo headphones and a chess set in the auto. The officers then ordered the car towed to the police station to be searched, and took defendants in their patrol car down to the station. Richard Sander later identified the jar of coins, the headphones, the chess set and the credit card as items stolen from him by defendants during the armed robbery.

On appeal, defendants first contend that the trial judge improperly admitted the coins, chess

set and headphones into evidence. They argue that there was no probable cause to either arrest them or search their car. We disagree.

When the police received the radio run, they were given a description of defendants' auto and its license number, and were told that a robbery was feared. Upon reaching the motel, they noted that the license plate was covered by a rag. When they called to defendants, one of the men suddenly darted behind the other, apparently in order to momentarily conceal himself from the officers' view. When the one officer went to the spot where this activity occurred, he found a pistol and a credit card, the credit card bearing the name of a third party. These factors gave the officers probable cause to believe that they had interrupted an attempted armed robbery, and thus to place defendants under arrest.[1]

After the police had arrested defendants, they walked over to the Valiant and looked through its windows, noting the headphones, chess set and a large jar of coins. This action on their part did not constitute a "search" for Fourth Amendment purposes, as defendants could not entertain a reasonable expectation of privacy in goods lying on the back seat of a car parked on a public street. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973). We think that the discovery of these items by the police, coupled with their strong suspicion that defendants had just attempted a robbery, as well as the presence of a

---

[1] Probable cause to arrest requires that the arresting officer have sufficient information, at the time of arrest, to lead a prudent person to believe a felony has been or is being committed by the person arrested. *People v McLott,* 55 Mich App 198; 222 NW2d 178 (1974), *People v Hintz,* 62 Mich App 196; 233 NW2d 228 (1975). For the legal significance of a "furtive gesture" similar to the one in this case, see *People v Obadele,* 58 Mich App 139; 227 NW2d 258 (1975).

handgun and an unaccounted-for credit card, gave the police probable cause to believe that defendants had been involved in an earlier robbery, and that contraband from that robbery was present in the car. That probable cause gave the police the right to search the car at the motel, *Whalen, supra,* or to take the car and conduct the search at the station. *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970). Because there was probable cause to search the car and seize the items inside, the trial judge did not err in admitting the evidence.

Defendants next argue that reversible error occurred when the trial judge admitted testimony concerning the circumstances of defendants' arrest because these circumstances indicated that they were in the process of committing another crime at the time of the arrest.

Generally, evidence which tends to show that a defendant has committed crimes other than those charged is inadmissible at trial. *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973). MCLA 768.27; MSA 28.1050 provides a statutory exception to the above rule:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

In the instant case, defendants' defense was one

of misidentification by the complaining witness, Richard Sander. Sander's lineup identification of the defendants was equivocal; identity of his assailants was a material issue. Under MCLA 768.27; MSA 28.1050, evidence tending to suggest subsequent attempted robberies was admissible to show a common scheme, plan or system in order to aid the jury on the identification issue. The prosecution's evidence, if believed, would tend to show that within a period of two hours, defendants attempted three distinct robberies. The old Valiant, license number NKV 610, was used in all three attempts. In all three instances, the men attempted to gain entrance by innocent appearing methods. In two of the three situations, a small silver gun was seen. This evidence indicated sufficiently similar activity to come within the ambit of MCLA 768.27; MSA 28.1050. *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971), *People v Jackson,* 46 Mich App 764; 208 NW2d 526 (1973).

Defendants' other allegations of error are meritless.

Affirmed.