PEOPLE v KRAAI

Docket No. 77-262. Submitted May 1, 1979, at Lansing.—Decided
September 19, 1979. Leave to appeal denied, 407 Mich —.

Barnard Kraai was convicted of first-degree criminal sexual con-
duct and, on his plea of guilty, of being a habitual second
felony offender, Ingham Circuit Court, James T. Kallman, J.
Complainant, a 15-year-old girl, testified that she was attacked
by a man while walking through a park in Lansing, Michigan,
and was forced to perform an act of fellatio on him. The
defense was alibi. On appeal, defendant raises four claims of
error: (1) that the evidence introduced at the preliminary
examination as to the element of personal injury suffered by
the victim was insufficient to support binding over on a charge
of first-degree criminal sexual conduct, (2) that the trial court
erred in allowing the prosecution to introduce evidence of
another sexual assault allegedly perpetrated by defendant, (3)
that the trial court reversibly erred in its jury instructions on
the use of the evidence of defendant's escape from custody at
the time of his circuit court arraignment, and (4) that the
prosecution's introduction of a rebuttal witness was so prejudi-
cial as to constitute reversible error. *Held:*

1. Injuries suffered in a sexual assault need not be permanent
or substantial. Complainant testified that during the sexual
assault she suffered a bloody nose, a slap in the face, a punch
to the stomach, strangulation until she lost consciousness and
mental anguish. This is sufficient to satisfy the statutory ele-
ment of personal injury for purposes of establishing first-degree
criminal sexual conduct.

2. Where a defendant's other bad act is offered to prove

REFERENCES FOR POINTS IN HEADNOTES
[1] [No Reference]
[2] 29 Am Jur 2d, Evidence §§ 320, 321, 333.
[3] 29 Am Jur 2d, Evidence §§ 321, 333.
[4] 29 Am Jur 2d, Evidence § 322.
[5] 29 Am Jur 2d, Evidence § 285.
[6] 75 Am Jur 2d, Trial § 920.
[7] 29 Am Jur 2d, Evidence §§ 250, 269.
[8] 81 Am Jur 2d, Witnesses § 563.

identity, the special circumstances common to both the other act and the charged offense must be similar in both instances. The type of force used and the nature of the sexual act were entirely different in the two assaults; therefore, evidence of the other bad act was highly prejudicial and should have been excluded.

3. A defendant's flight from custody may be admitted to show a defendant's state of mind but it cannot be considered as substantive proof of guilt. The court's instruction, "You may consider this fact [escape from custody] in determining the guilt or innocence of the defendant" was erroneous and requires reversal.

4. The testimony of the rebuttal witness should have been part of the prosecution's case in chief. It was not responsive to any issue raised by the defense and tended only to prove the commission of the crime itself. It was highly inappropriate, prejudicial and an improper subject matter for rebuttal testimony.

Reversed and remanded.

1. CRIMINAL LAW — CRIMINAL SEXUAL CONDUCT — ELEMENTS — STATUTES — CRIMINAL JURY INSTRUCTIONS.

The statutory element of personal injury for purposes of establishing first-degree criminal sexual conduct means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ; the injuries suffered need not be permanent or substantial, it is sufficient where the assailant inflicts bodily injury upon his victim by slapping, punching, strangulation and causing mental anguish to the victim (MCL 750.520a[f]; MSA 28.788[1][f], CJI 20:2:11).

2. CRIMINAL LAW — EVIDENCE — OTHER BAD ACTS — ADMISSIBILITY — EXCEPTIONS.

Evidence of a defendant's other bad acts is generally inadmissible because it prevents an objective determination of the defendant's guilt or innocence of the crime charged; there are, however, a limited number of statutory and judicial exceptions to this exclusionary rule.

3. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — PROBATIVE VALUE — PREJUDICE — TESTS FOR ADMISSIBILITY.

A trial court's decision to allow evidence of a criminal defendant's similar or other bad acts requires that: (1) substantial evidence show that the defendant actually committed the bad act, (2) some special circumstance about the act sought to be

introduced tends to prove one of the statutory items, (3) the evidence is material and is probative of a matter in issue, and (4) even if all three of the above are satisfied, the trial court must still weigh the evidence's probative value against its prejudicial effect before deciding whether to admit the evidence.

4. Criminal Law — Identity — Evidence — Similar Acts — Admissibility — Uncharged Offenses — Inferences.

Evidence of a defendant's similar acts may be admissible in order to establish identity; however, where other bad acts are offered to prove identity, the test for admission is as follows: the inference of identity arises when the marks common in the charged and uncharged offenses considered singly or in combination, logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offenses.

5. Evidence — Instructions to Jury — Escape from Custody — State of Mind — Proof of Guilt.

Evidence of a defendant's flight from custody is admissible to show a defendant's state of mind but it cannot be considered as substantive proof of guilt; therefore, an instruction which states, "You may consider this fact [escape from custody] in determining the guilt or innocence of the defendant" is erroneous.

6. Instructions to Jury — Conflicting Instructions — Erroneous Instructions — Jury Selection.

A jury will be presumed to have followed the erroneous instruction where correct and incorrect instructions are given on the same point, especially where the correct and incorrect instructions are not mutually exclusive.

7. Criminal Law — Evidence — Rebuttal and Rebutting Evidence.

Rebuttal is limited to the refutation of relevant and material evidence; therefore, testimony which should have been part of the prosecution's case in chief, was not responsive to any issue raised by the defense and tended only to prove the commission of the charged crime, is improper subject matter for rebuttal.

8. Witnesses — Credibility — Impeachment — Good Citizen Standard.

Discrediting an alibi witness by insinuating that she failed to act as a good citizen is not permitted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, and *Lee W. Atkinson,* Chief, Criminal Division, for plaintiff.

*F. Martin Tieber,* Assistant State Appellate Defender, for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER and W. VAN VALKENBURG,* JJ.

W. VAN VALKENBURG, J. Defendant was charged with and convicted by jury trial of first-degree criminal sexual conduct contrary to MCL 750.520b; MSA 28.788(2).[1] Defendant also pled guilty to an additional charge of being a habitual second felony offender, MCL 769.10; MSA 28.1082, and was sentenced to two concurrent prison terms of 60 to 90 years.[2] He now appeals as of right. We find numerous errors denying defendant a fair trial and reverse.

Briefly stated, the facts indicate that the 15-year-old complainant was attacked by a man while walking through a park in Lansing, Michigan, around noon on January 23, 1976, and was forced to perform an act of fellatio on her assailant. Defendant offered an alibi defense. Other facts will be detailed when necessary to our discussion of the issues.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Although the offense allegedly occurred in Ingham County, venue was changed to Delta County because of the nature of the crime and pretrial publicity.

[2] We briefly note that the habitual offender statute does not create a separate substantive offense, but only permits the trial judge to augment a defendant's sentence for second and subsequent felonies. *People v Shotwell,* 352 Mich 42; 88 NW2d 313 (1958). The trial court erred in failing to vacate defendant's sentence for first-degree criminal sexual assault when sentencing him on the habitual offender conviction. See MCL 769.13; MSA 28.1085.

Defendant raises four claims of error which warrant discussion: (1) that the evidence introduced at the preliminary examination as to the element of personal injury suffered by the victim was insufficient to support binding over defendant on a charge of first-degree criminal sexual conduct; (2) that the trial court erred in allowing the prosecution to introduce evidence of another sexual assault allegedly perpetrated by defendant; (3) that the trial court reversibly erred in its jury instructions on use of the evidence of defendant's escape; and (4) that the prosecution's introduction of one rebuttal witness was so prejudicial as to constitute reversible error.

I

At defendant's preliminary examination, the complainant testified that during the sexual assault she had suffered a bloody nose, a slap in the face, a punch to the stomach, strangulation until she lost consciousness and mental anguish. Defendant contends on appeal that none of these purported injuries was sufficient to constitute "personal injury" within the meaning of MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), the provision setting forth the elements of first-degree criminal sexual conduct relevant to this prosecution, because no injury was severe or permanent in nature, and that he therefore should not have been bound over on that charge.

The statutory element of "personal injury" for purposes of establishing first-degree criminal sexual conduct is defined in MCL 750.520a(f); MSA 28.788(1)(f):

" 'Personal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease,

or loss or impairment of a sexual or reproductive organ."

The pertinent Michigan Criminal Jury Instruction, CJI 20:2:11, further provides as follows:

"Personal injury means bodily injury. It also includes any disfigurement, chronic pain, pregnancy, disease, loss or impairment of a sexual or reproductive organ, or mental anguish.* Mental anguish means suffering which occurs at the time of the alleged act."

We find no indication in the statute that the injuries suffered must necessarily be permanent or substantial. It is sufficient that the assailant inflict bodily injury of the sort described by the complainant in the instant case. *People v Thompson,* 76 Mich App 705, 710; 257 NW2d 268 (1977).

We also reject defendant's related contention that the statutory definition of "personal injury" is void for vagueness because, without some saving interpretation of the term, there is no principled distinction between first- and third-degree criminal sexual conduct. Defendant particularly focuses on the mental anguish component of "personal injury". He argues that conduct which would otherwise constitute only third-degree criminal sexual conduct, MCL 750.520d(1)(b); MSA 28.788(4)(1)(b) (sexual penetration accomplished by force or coercion), necessarily causes at least temporary mental anguish to the victim, thus allowing prosecutors to arbitrarily raise the charge to first-degree criminal sexual conduct, MCL 750.520b(1)(f) (sexual penetration accomplished by force or coercion with infliction of personal injury). Defendant decries this lack of specific criteria to guide prosecutorial charging discretion and asks us to read into the definition of "personal injury" a requirement for

serious psychiatric impairment rather than mere mental anguish.

We note defendant's constitutionally based challenge to the statute because, raised in an appropriate case, it has arguable merit. But this is not such a case. Defendant lacks standing to raise the issue because the evidence of bodily injury to complainant clearly supports a charge of first-degree as opposed to third-degree criminal sexual conduct. *Thompson, supra. Cf., People v Swearington,* 84 Mich App 372, 374; 269 NW2d 467 (1978).

## II

Defendant's next allegation of error concerns the trial court's decision to allow evidence, under a similar acts theory, that defendant had perpetrated another sexual assault on a 17-year-old victim in a parklike area in Lansing, Michigan, on February 12, 1976.[3] Over defense counsel's objection, the trial court ruled that the similar act evidence was material to a matter in issue and that it was more probative than prejudicial.

Although evidence of a defendant's other bad act is generally inadmissible because it prevents an objective determination of defendant's guilt or innocence of the crime charged, *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), there are a limited number of statutory and judicial exceptions to this exclusionary rule. See *People v Wilkins,* 82 Mich App 260, 265-270; 266 NW2d 781

---

[3] At the time of this trial, defendant had only been charged with committing a second act of criminal sexual conduct. Subsequent to his conviction in this case, however, defendant pled guilty to the second offense and was sentenced to a prison term of 10 to 15 years. His guilty plea was affirmed by this Court in an unpublished per curiam opinion. (Docket No. 77-4208, decided November 14, 1978 [unreported]).

(1978), for a comprehensive delineation of those exceptions.

Under the circumstances of the instant case, the most likely rationale for introducing evidence of another alleged sexual assault by defendant was to prove the identity of the perpetrator of the charged offense.[4] See *Wilkins, supra* at 269. See also *People v Kelly,* 386 Mich 330, 333-335; 192 NW2d 494 (1971), *People v Oliphant,* 399 Mich 472, 489; 250 NW2d 443 (1976), *People v Clark,* 62 Mich App 740, 742-744; 233 NW2d 856 (1975), *People v Gibson,* 66 Mich App 531, 536-537; 239 NW2d 414 (1976), *People v Golochowicz,* 89 Mich App 57, 59-60; 279 NW2d 576 (1979). Because defendant offered an alibi defense, the central factual dispute at trial was whether defendant and not some other individual had committed the sexual assault which complainant described.

Once a basis for offering evidence of a defendant's other bad act is established, however, it must still be shown that the evidence meets the threshold requirements for admission. These requirements were stated in *People v Ernest Smith,* 87 Mich App 18, 22; 273 NW2d 573 (1978):

"(1) substantial evidence must show that the defendant actually committed the bad act; (2) some special circumstance about the act sought to be introduced

---

[4] Neither the prosecutor's arguments below nor the trial court's jury instructions demonstrated a clear understanding of the potential relevance of defendant's other bad act. Citing as authority the similar act statute, MCL 768.27; MSA 28.1050, the prosecutor contended that the evidence showed a "scheme, plan or system" used by defendant to obtain forced sex from his victims. But he never specified what connection this alleged plan had to any particular disputed issue at trial. The trial judge instructed the jury that it could consider the other bad act in determining whether defendant was acting purposefully pursuant to a characteristic scheme, plan or system, thus negating the possibility of accident, mistake or misjudgment on his part. We find no indication that defendant's intent was ever in dispute.

tends to prove one of the statutory items; (3) the evidence is material, *i.e.,* is probative of a matter 'in issue'; and (4) even if all three of the above are satisfied, the trial court must still weigh the evidence's probative value against its prejudicial effect before deciding whether to admit it."

See also *Golochowicz, supra* at 59-60; *Wilkins, supra* at 267-268; *Oliphant, supra.* More specifically, where a defendant's other bad act is offered to prove identity, the test for admission is as follows:

" '[T]he inference of identity arises when the marks common in the charged and uncharged offenses, considered singly or in combination, logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offenses.' *People v Haston,* 69 Cal 2d 233, 246; 70 Cal Rptr 419; 444 P2d 91 (1968)." *People v Jones,* 83 Mich App 559, 566; 269 NW2d 224 (1978).

In the instant case, there was sufficient evidence to show that defendant actually committed the other bad act. But we find a fatal deficiency in the absence of special circumstances common to both the other act and the charged offense from which one could logically infer that the identity of the perpetrator was the same in both instances.

Among the more unpersuasive similarities alleged by the prosecution below were the following: both acts occurred during the afternoon in secluded park areas, both acts involved young victims taken by surprise, and neither act involved robbery as a motive. These attributes of both incidents are also common to many other sexual assaults.

Other common factors emphasized by the prosecution were the manner in which the assailant grabbed both victims from behind by placing one hand over the mouth and the other arm around the waist or shoulders, the way in which both sexual assaults were initiated by rubbing and sucking the victim's breasts, and the similarities between the victims' physical descriptions of their assailant (*e.g.,* caucasian, blue coat, brown pants, medium build). The prosecutor also pointed out that the two assaults occurred within a few weeks of each other and in the same area of the city. The similarity in method of grabbing the victims and in initial attention to the victims' breasts does tend to indicate a common *modus operandi.* But again the methods common to these two incidents are not particularly distinctive when compared to those used in other sexual assaults. While there do exist several similarities in physical description, we note that they relate to rather general attributes of appearance and apparel.

The most telling factor in our decision that the other act was wrongly introduced at trial is, however, the number of significant differences in *modus operandi* between the two assaults. In the assault on which the instant prosecution was based, the assailant never attempted to hide his identity. He displayed no weapon nor did he intimate that he had one. Instead, he punched, slapped, shoved and choked the victim, inflicting various bodily injuries upon her. After rubbing her vaginal area, he forced her to commit an act of fellatio upon him. By contrast, in the other assault, the assailant obscured his features from the victim by covering most of his face with the hood of his jacket and lifted her shirt up over her face. While he displayed no weapon, he threatened to

"cut her up" and patted his coat pocket as if to indicate the presence of a knife. He did not inflict any physical injury upon her. Finally, the assailant shoved the victim's hairbrush up her vagina and then vaginally penetrated her with his penis three or four times. Thus, the concern for concealment of identity, the type of force used and the nature of the sexual act accomplished were entirely different in the two assaults. Far from being "strikingly similar", *Kelly, supra, Clark, supra,* or demonstrating a "singular pattern", *Jones, supra,* many of the characteristics of the two assaults were gravely dissimilar. Evidence of the other bad act was highly prejudicial to defendant and should have been excluded.

## III

The next alleged error concerns the trial court's jury instruction on defendant's escape from custody at the time of his circuit court arraignment in this case.[5] Over defendant's objection, the judge instructed as follows:

"There has been some evidence that the Defendant fled from custody of the State after his arrest but before his trial on the charge. You should first determine whether you believe the testimony and whether you believe that that testimony establishes that the Defendant escaped. *You may consider this fact in determining the guilt or innocence of the Defendant.* It may point to panic, mistake or fear equally as well. While this evidence is not conclusive evidence of defendant's guilt or innocence, it may be considered along with all the other evidence and circumstances of the case in determining the Defendant's state of mind."

[5] Defendant was later apprehended in California pursuant to a Federal fugitive warrant and was brought back to Michigan for trial.

The instruction was erroneous and requires reversal. It is well settled in Michigan that evidence of a defendant's flight from custody is admissible to show defendant's state of mind. But contrary to the judge's instruction, it cannot be considered as substantive proof of guilt. *People v Bunker*, 22 Mich App 396, 408-409; 177 NW2d 644 (1970), *People v Cismadija*, 167 Mich 210, 215; 132 NW 489 (1911). Even though the judge also correctly charged the jury on use of the escape evidence in determining defendant's state of mind, we must presume that the jury followed the erroneous instruction. *People v Sangster*, 33 Mich App 712, 715; 190 NW2d 317 (1971), *People v Eggleston*, 186 Mich 510, 514-515; 152 NW 944 (1915). This is especially so where, as here, the correct and incorrect instructions were not mutually exclusive.

## IV

Finally, defendant alleges that reversible error occurred when the prosecution was allowed to introduce an improper rebuttal witness, defendant's wrestling coach, to testify about wrestling matches which defendant had failed to attend in January and February of 1976. This witness also testified about a particular wrestling hold allegedly similar to the technique which the complainant's assailant had used to grab her from behind. The coach was then recalled by the prosecution to demonstrate the wrestling hold on the prosecutor.

The prosecutor argues that defendant's wrestling schedule was a proper subject of rebuttal inquiry because defendant and his alibi witnesses used it as a focus for their recollection of events on the date of the alleged offense. While the prosecution overstates the witnesses' reliance on the

schedule, we concede some marginal relevance at least in the fact that there was no wrestling match scheduled on the day after the alleged assault.[6] In addition, that portion of the coach's remarks could not have been very prejudicial to defendant.

But the coach's rebuttal testimony about and demonstration of the wrestling hold was highly inappropriate and improper. If admissible at all, the testimony should have been part of the prosecution's case in chief. It was not responsive to any issue raised by the defense and tended only to prove the commission of the crime itself, an improper subject matter for rebuttal testimony. See *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974).[7] Furthermore, even though defendant did not object, the trial court should have halted immediately the prosecution's prejudicial courtroom dramatics at the close of trial.

In the event of a retrial, we also warn the prosecution to refrain from employing certain unsubstantiated, prejudicial lines of cross-examination against defendant's alibi witnesses. There was absolutely no factual basis for the prosecutor's intimations that one alibi witness had been threatened with death by defendant, that her mother had been distressed by defendant's phone calls or that the witness had gone to the prosecutor's office to gather information so as to manufacture an alibi for defendant. Neither should the prosecutor

---

[6] Two of defendant's alibi witnesses stated that, in reconstructing the events of the date in question, they partially relied on their memories of a scheduled wrestling match the next day. Defendant himself did not testify to any such reliance.

[7] MRE 611(a) now sets forth the standard for mode and order of trial witness interrogation. Although this rule was not in effect at the time of this trial, we note that it would dictate the same result. The committee notes to the text of proposed Rule 611(a), which was passed as proposed, state that it is consistent with prior Michigan law.

have attacked another alibi witness on the grounds that she was remiss in not reporting her knowledge of defendant's escape to the police. There was no evidence that she herself had assisted defendant's escape and she had no legal duty to report whatever knowledge she had. Discrediting an alibi witness by insinuating her failure to act as a good citizen is not permissible.[8] *Cf., People v Simons,* 42 Mich App 400; 202 NW2d 575 (1972). Consonant with our duty to maintain the integrity of the trial process, a duty to which the prosecutor in this case should feel equally dedicated, we cannot tolerate such unwarranted use of innuendo and tactics of intimidation.

Because defendant's underlying conviction for first-degree criminal sexual conduct is infirm, we must also reverse his habitual second felony offender conviction. Remanded for trial.

[8] The witness testified that what little "inside information" she had concerning defendant's escape was communicated to her by her boyfriend and that she herself had no desire to become involved. Her mere failure to report the information to the police does not support any logical inference of bias.