840 F.2d 18
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dwight TERRY, Petitioner,
v.
Dale FOLTZ, Warden, State Prison of Southern Michigan, Respondent.
 No. 87-1002.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1988.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and GIBBONS, District Judge.*
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Petitioner Dwight Terry appeals from the district court's denial of his application for writ of habeas corpus seeking relief from his 1978 conviction of first degree murder. For the reasons set forth below, we affirm the district court's denial of the writ.
 
 
 2
 Petitioner and his brother, James Terry, were tried jointly before a jury. The state's evidence showed that the body of Sidney Bundrage, petitioner's brother-in-law, was found on October 2, 1977, in Rouge Park in Detroit. He had been shot twice in the head at close range, his left wrist was bound with telephone wire, and his left hand was burned in a manner consistent with a gasoline burn. A medallion with the inscription "Jackie" was found in a pool of blood. Fingerprints on a gasoline can found near the body matched James Terry's fingerprints. A police search of the house which was shared by petitioner and his wife, Jackie, and James Terry, uncovered telephone wire matching the wire on the victim's wrist, clothing belonging to the victim, and unspent shells matching the bullets used to kill the victim.
 
 
 3
 Both petitioner and James Terry claimed that they were attending a birthday party for their mother on the afternoon of October 2, and therefore they could not have committed the murder. Several family members, including their mother, three sisters, and James Terry, all testified that both petitioner and James Terry were at the birthday party. However, a neighbor testified that she saw James Terry and Sidney Bundrage leave the birthday party together at 3:00 p.m.
 
 
 4
 Petitioner did not take the stand and did not present any evidence on his own behalf. A portion of the statement he gave to the police was read into evidence. In that statement, petitioner admitted that the medallion found in the pool of blood was his. He stated that he was wearing the medallion on the morning of October 2, but that he had lost it. He further stated that he walked to a shopping center near Rouge Park shortly before the murder.
 
 
 5
 The jury found both petitioner and James Terry guilty of first degree murder and possession of a firearm during the commission of a felony. Petitioner was sentenced to life imprisonment for the murder conviction, and a mandatory consecutive term of two years for the felony-firearm conviction.[1]
 
 
 6
 Petitioner's conviction was affirmed by the Michigan Court of Appeals and the Michigan Supreme Court denied his letter request for review.
 
 
 7
 In his petition for writ of habeas corpus, petitioner alleges that his conviction is constitutionally infirm on the grounds that there was insufficient evidence to sustain the conviction, that he was denied a fair trial by prosecutorial misconduct, and that he was denied effective assistance of counsel. The district court found that each claim was without merit and denied the petition.
 
 
 8
 We review petitioner's insufficient evidence claim to determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 9
 The most incriminating evidence against petitioner was the medallion found in a pool of blood near the victim's body. Petitioner admitted to police that the medallion was his, that he was wearing it on the morning of October 2 but had lost it, and that he was at a shopping center near Rouge Park shortly before the murder. It was further established that petitioner and his brother James shared a house, with petitioner and his wife occupying the ground floor and James occupying the second story. Live shells matching those used to kill Sidney Bundrage were found under the cushions of the sofa in the living room on the first floor. The victim's clothing and more bullets were found upstairs. Telephone wire was found on the dining room table and on a fence post in the backyard. A chemist testified that the pieces of wire found at petitioner's home and on the victim's wrist were in fact part of the same length of wire. Although this evidence is circumstantial, we agree that it is sufficient to support petitioner's conviction of first degree murder.
 
 
 10
 Petitioner's second claim is that the prosecutor's improper questions and argument denied him a fair trial. Petitioner is entitled to habeas corpus relief only if the prosecutor's comments, considering the totality of the circumstances of the case, rendered the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Summitt v. Bordenkircher, 608 F.2d 247, 253 (6th Cir.1979), aff'd sub nom. Watkins v. Sowders, 449 U.S. 341 (1981).
 
 
 11
 In his opening statement, the prosecutor told the jury that defendants would present alibi witnesses. Counsel for codefendant James Terry objected on the ground that the prosecutor's statement impermissibly shifted the burden to defendants to prove the alibi, but the objection was overruled since a notice of alibi had been filed. Petitioner argues that the improper reference to alibi witnesses was particularly prejudicial to him because he did not testify and did not present any witnesses in his own behalf. We note that there was some evidence of petitioner's alibi since the witnesses called by James Terry testified that petitioner was also present at the birthday party. Counsel for petitioner did not object to the prosecutor's remarks and the jury was properly instructed regarding the prosecutor's burden to rebut the alibi defense.
 
 
 12
 Petitioner also argues that the prosecutor, in his questions to the police officer who interviewed petitioner's mother[2] and closing argument, improperly used innuendo unsupported by facts, to link petitioner to James Terry, against whom the evidence was more damaging.[3] The prosecutor suggested to the jury that petitioner left the birthday party with James Terry and Sidney Bundrage, and that petitioner and James Terry acted in concert to murder Sidney Bundrage.
 
 
 13
 On cross-examination of the alibi witnesses, the prosecutor asked each witness whether he or she had told the police about petitioner's presence at the birthday party. Although petitioner is correct in his assertion that, under Michigan law, it is impermissible to discredit an alibi witness by insinuating that the witness should have reported any information he had to the police, see People v. Kraai, 92 Mich.App. 398, 411, 285 N.W.2d 309, 315-16 (1979), leave to appeal denied, 407 Mich. 954 (1980), petitioner failed to make any objection. The questions and argument complained of were directly related to petitioner's alibi defense and were not objected to.[4] Furthermore, the jury was properly instructed that the statements of counsel were not evidence. We conclude that the questions and arguments of the prosecutor were not so egregious that petitioner was denied a fair trial.
 
 
 14
 Finally, petitioner claims that he was denied effective assistance of counsel when his counsel, Mr. Arduin, was temporarily absent from trial during a portion of the state's case in chief. The two defense counsel and petitioner agreed that Mr. Howard, counsel for codefendant James Terry, would represent petitioner in Mr. Arduin's absence. The record reflects that the court specifically inquired if petitioner consented to his counsel's absence.
 
 
 15
 THE COURT: Mr. Dwight Terry, I understand that with your approval Mr. Arduin is going down to another court room on a matter and that while he is gone Mr. Howard will stand in in place of Mr. Arduin as your attorney, is that with your approval?
 
 
 16
 DEFENDANT DWIGHT TERRY: Yes, it is.
 
 
 17
 Mr. Arduin then left and the jury was recalled into the courtroom. The trial judge then told the jury of the agreement.
 
 
 18
 THE COURT: Further, ladies and gentlemen, Mr. Arduin has had to leave the Court room and in that period, by stipulation between counsel, Mr. Howard and Mr. Arduin, as well as Mr. Dwight Terry, that Mr. Howard will be representing both Mr. James Terry and Mr. Dwight Terry in Mr. Arduin's absence.
 
 
 19
 Is that a correct statement, Mr. Howard?
 
 
 20
 MR. HOWARD: It is, your Honor.
 
 
 21
 THE COURT: And, Mr. Dwight Terry, is that a correct statement?
 
 
 22
 DEFENDANT DWIGHT TERRY: Yes, sir.
 
 
 23
 The record reveals that while Mr. Arduin was absent from the courtroom, the state called four witnesses, including the physician who performed the autopsy of the victim, and three police officers involved in investigating the case. Sgt. Chester Kicinski, who executed the search warrant on the house occupied by petitioner and James Terry, testified as to the items discovered in the house, and Sgt. Edward Gale testified to the footprints and tire tracks found at the scene of the crime. Both Sgt. Kicinski and Sgt. Gale were cross-examined by Mr. Howard. Sgt. Neil Schwartz interviewed petitioner after his arrest. Sgt. Schwartz testified that he advised petitioner of his rights, that petitioner indicated he understood his rights and wished to make a statement. Sgt. Schwartz then read into evidence a redacted form of petitioner's statement in which petitioner admitted that the medallion was his, that he was wearing it on the morning of October 2, and that he was in the vicinity of Rough Park shortly before the murder. Mr. Howard objected to the prosecutor's attempt to ask Sgt. Schwartz to clarify a portion of the statement. While counsel were arguing the objection, Mr. Arduin returned. He participated in arguing the objection and in a conference with the trial judge in chambers. After everyone returned to the courtroom, the prosecutor stated that he had no further questions of Sgt. Schwartz. Mr. Howard and Mr. Arduin were permitted to confer together outside the courtroom. After they returned, both Mr. Arduin and Mr. Howard declined to cross-examine the witness.
 
 
 24
 Petitioner claims that counsel's absence during a portion of the state's case in chief denied him effective assistance of counsel, and that our previous decision in Green v. Arn, 809 F.2d 1257 (6th Cir.), vacated on other grounds, 108 S.Ct. 52 (1987), requires us to reverse the district court and grant the writ of habeas corpus.
 
 
 25
 Petitioner's argument, in essence, asks us to apply a per se rule that whenever defense counsel is absent during the presentation of direct evidence against him, he has been denied effective assistance of counsel and a harmless error inquiry is foreclosed. We decline to adopt such a per se rule. Green does not require a different result.[5] The defendant in Green strenuously objected to her counsel's absence and did not consent to be represented by counsel for her codefendant. In this case, petitioner expressly consented to his counsel's absence and was adequately represented by counsel for his codefendant. Petitioner suggests that counsel's absence during this crucial portion of the trial contributed to counsel's numerous other mistakes: misstatement of defendant's theory of the case in closing argument, failure to object to the prosecutor's innuendo, and failure to cross-examine Sgt. Schwartz. But petitioner cannot demonstrate a causal relationship between counsel's absence and counsel's other errors. The prosecutor, Mr. Arduin, Mr. Howard and the court had gone over the redacted statement during pretrial proceedings.[6] Mr. Arduin knew exactly what was going to be read into evidence. It is apparent that the decision not to cross-examine Sgt. Schwartz was a tactical decision designed to minimize the damage to petitioner's defense. Counsel's absence from the trial and other alleged errors do not constitute deficient performance, and petitioner was not denied effective assistance of counsel.
 
 
 26
 Accordingly, for the reasons set forth above, we affirm the judgment of the district court.
 
 
 27
 Before KEITH and ALAN E. NORRIS, Circuit Judges and GIBBONS, District Judge.*
 
 
 28
 JULIA S. GIBBONS, District Judge, dissenting.
 
 
 29
 I agree with Judge Norris's conclusions with respect to the sufficiency of the evidence and the prosecutor's comments. I disagree with his analysis with respect to the denial of assistance of counsel issue and must therefore respectfully dissent.
 
 
 30
 As Judge Norris notes, this case is factually distinguishable from Green v. Arn, 809 F.2d 1257 (6th Cir.), vacated on other grounds, 108 S.Ct. 52 (1987). In Green the defendant vigorously objected to her counsel's absence and did not consent to representation by her co-defendant's attorney. Here petitioner did indicate that he approved of his representation by his co-defendant's attorney during his own attorney's absence from the courtroom. This record is not adequate, however, to permit a finding as to whether petitioner was aware of his right to have his attorney present throughout all critical stages of the proceedings and intelligently, knowingly and voluntarily waived that right. I would remand this case for an evidentiary hearing to make that determination. If no waiver were found, I believe that application of the Green rule would require granting the writ. Petitioner's attorney was absent during the testimony of four state witnesses, including the physician who performed the autopsy of the victim and three police officers who investigated the case. Such an absence can hardly be said to be so de minimis as to lack constitutional significance. See Green, 809 F.2d at 1261.
 
 
 
 *
 The Honorable Julia S. Gibbons, United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 James Terry was slain at the Southern Michigan state prison in 1982
 
 
 [2]
 The prosecutor asked the following questions of the police officer who interviewed petitioner's mother
 Q. And did she also indicate to you that there came a time when her son, James, and Sidney left her home?
 A. Yes, sir.
 Q. Did she ever indicate to you at the time of that interview that, in addition to James and Sidney, another of her sons accompanied them when they left?
 A. No, sir.
 Q. Who did she indicate left when James and Sidney left?
 A. She indicated that James and Sidney arrived and left together.
 Q. And she did not indicate that anyone else left at that time?
 A. No, sir.
 (Emphasis added.)
 
 
 [3]
 James Terry and Sidney Bundrage had been seen leaving the birthday party together
 
 
 [4]
 We recognize that petitioner's counsel was absent from the trial during the prosecutor's direct examination of the police officer who interviewed petitioner's mother, but petitioner was represented at the time by counsel for codefendant James Terry
 
 
 [5]
 The panel in Green recognized that there might be some instances in which the absence of the criminal defendant's attorney would be so de minimis that there would be no constitutional significance. 809 F.2d at 1261
 
 
 [6]
 Petitioner and James Terry were originally scheduled for a joint trial. After the prosecutor indicated that he intended to introduce petitioner's statement, which also inculpated James Terry, in evidence, the court granted defendants' motions for separate trials to avoid any problems under Bruton v. United States, 391 U.S. 123 (1968). The prosecutor redacted petitioner's statement to delete any references to James Terry and moved to reconsolidate the two cases. The record reflects that Mr. Arduin went over the redacted statement carefully and had shown the redacted version to petitioner
 
 
 *
 The Honorable Julia S. Gibbons, United States District Court for the Western District of Tennessee, sitting by designation