PEOPLE v SIMONS

1. Assault and Battery—Evidence—Violence—Admissibility.

The prosecution may not show that a defendant charged with an assaultive crime has committed other acts of violence, although convictions may be shown to impeach the credibility of a defendant who becomes a witness in his own behalf (MCLA 750.83).

2. Criminal Law—Witnesses—Impeachment—Evidence—Misconduct.

Impeachment of the credibility of a witness by showing that the witness was guilty of misconduct not resulting in convictions is not permissible.

3. Assault and Battery—Trial—Prosecutor's Comments—Prejudice.

A prosecutor's deliberate and repeated attempts, after objections to his line of questioning were sustained, to show that the nontestifying defendant in an assault case was assaultive by nature, and that his wife, a witness in his behalf, was guilty of marital misconduct constituted reversible error since the damage was done, even though defendant's objections were consistently sustained, by leaving the jury with the impression that the defendant was a brutish, assaultive man who physically abused and threatened his wife, and that she had betrayed her former husband, the victim of the assault (MCLA 750.83).

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted Division 1 March 8, 1972, at Detroit. (Docket No. 10814.) Decided August 28, 1972.

William R. Simons was convicted of assault with

References for Points in Headnotes

[1] 6 Am Jur 2d, Assault and Battery § 101.

29 Am Jur 2d, Evidence §§ 251 *et seq.;* 298.

[2] 58 Am Jur, Witnesses § 754.

[3] 53 Am Jur, Trial § 88.

intent to commit murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Gerald Curtis,* for defendant on appeal.

Before: Levin, P. J., and V. J. Brennan and Van Valkenburg,* JJ.

Levin, P. J. The defendant, William R. Simons, appeals his conviction of assault with intent to commit murder. MCLA 750.83; MSA 28.278.

The victim of the assault was Jack Nipper, who was married to the defendant's wife, Tromanda, before she married the defendant. Nipper appeared at 10:30 p.m. one summer evening at the apartment occupied by the defendant, Tromanda, and the children born of the marriage of Nipper and Tromanda. Nipper had come to visit the children. He was refused admittance. A heated argument ensued. Nipper left the apartment and went to a restroom in a laundromat on the ground floor of the apartment building. The defendant, armed with a .22-caliber rifle, followed Nipper to the laundromat and told him that he was going to hold him for the police. There were further words. A number of shots were fired by the defendant.

The defense was that the defendant had acted foolishly, and that he did not intend to harm or kill Nipper.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The defendant did not take the stand. Tromanda, Nipper's former wife, testified in support of the defendant's claim that he did not intend to harm Nipper.

In an effort to undermine her credibility and to show that the defendant was assaultive by nature, the prosecutor sought to establish during his cross-examination of Tromanda that she was not of good moral character and that the defendant had physically abused her. The defendant contends that the questions put by the prosecutor in these efforts exceeded permissible bounds.

Tromanda was asked whether she had ever complained to the police about "Bill", the defendant. She responded, "Once". The prosecutor continued, "You only called the police once about Bill?" The defendant's objection was sustained.

She was then asked whether there had been occasions when she and the defendant had separated. She responded, "Yes". The defendant's objection was considered at length outside the presence of the jury. The court sustained the objection and barred further inquiry concerning the defendant's relationship with his wife.

The prosecutor, nevertheless, pursued this line of inquiry: "Now, Mrs. Simons, I believe you testified that you and Mr. Simons had only been separated once since you were married. Is that correct?" The defendant's objection was sustained.

The prosecutor then asked her if she knew Victor Knat. The defendant objected, but the court did not rule. The prosecutor continued:

"*Q.* Who is he?
"*A.* I was going with Victor at one time.
"*Q.* Is that while you were married to Mr. Nipper?"

The defendant objected, the jury was excused,

and the defendant moved for a mistrial. After lengthy argument the court ruled that the prosecutor could not go into any acts of misconduct of the witness, and denied the mistrial motion.

The prosecutor returned to his theme: "Now, during the period that you were separated from Mr. Simons—how long did that last?" When the defendant objected, the prosecutor withdrew the question.

And later: "Has Mr. Simons ever threatened your life Mrs. — ?". The defendant's objection was sustained.

We are confronted with deliberate and repeated efforts of the prosecutor to impress upon the jury that the defendant was assaultive, and that Tromanda was possibly guilty of marital misconduct.[1] The prosecutor was undeterred by the rulings of the court sustaining the defendant's objections.

The damage was done even though the defendant's objections were consistently sustained. The prosecutor, no doubt, succeeded in his objective of leaving the jury with the impression that the defendant was a brutish, assaultive man who physically abused and threatened his wife, and that she had betrayed her former husband, the victim Nipper, by consorting with other men while she was married to him.[2]

It was completely beside the point whether the defendant was assaultive by nature.[3] The estab-

---

[1] *Cf. People v Michael Robinson,* 386 Mich 551, 563 (1972), where the Michigan Supreme Court declared that similar prosecutorial conduct was such an "affront to the integrity of the trial process that we will not countenance it".

[2] See *People v Hunter,* 218 Mich 525, 527 (1922).

[3] Since the defendant did not take the stand, the evidence of earlier convictions was not admissible as bearing on the issue of credibility. Nor is this the kind of case where evidence of earlier offenses is admissible to prove motive, intent, absence of mistake or accident, scheme, plan, or system in doing an act. See MCLA 768.27; MSA

lished rule is that it is not permissible to show that a defendant, charged with an assaultive crime, has committed other acts of violence,[4] although convictions may be shown to impeach the credibility of a defendant who becomes a witness in his own behalf.[5]

It is also impermissible to discredit a witness who gives testimony favorable to the defendant by showing that the witness was guilty of misconduct not resulting in convictions.[6]

The issue in dispute was the state of the defendant's mind when he acted—did he intend to murder Nipper? The jury may well have been deflected from balanced decision of the meritorious question by the inadmissible evidence concerning prior differences between the defendant and his wife, especially the alleged threat to kill her, and the imputations regarding her fidelity during her marriage to the victim.

A mistrial should have been granted when the prosecutor ignored the court's rulings.

The defendant's contention that he is entitled to have the charge dismissed because the people's evidence was insufficient to support a conviction is clearly without merit. There was ample evidence to support the inference drawn by the trier of fact that the defendant intended to kill Nipper when he assaulted him.

Reversed and remanded for a new trial.

All concurred.

---

28.1050. Nor was the evidence of the other crimes part of the so-called "*res gestae*" of this offense. In a word, we do not mean to be understood as saying that evidence of other crimes is never admissible. See McCormick, Evidence (2d ed), § 190, pp 447–454.

[4] *People v Wright,* 294 Mich 20 (1940); *People v Matthews,* 17 Mich App 48 (1969); *cf. People v Hunter, supra.*

[5] See *People v Brocato,* 17 Mich App 277, 302 (1969).

[6] See *People v James,* 36 Mich App 550, 559 (1971); *Cachola v The Kroger Co,* 32 Mich App 557 (1971). Similarly, see *Kovich v Church & Church, Inc,* 267 Mich 640, 644 (1934).