## PEOPLE v WILLIAMS

Docket No. 52228. Submitted December 9, 1981, at. Grand Rapids.—
Decided March 17, 1982.

James E. Williams was charged with arson of a dwelling house
and conspiracy to commit arson of a dwelling house. Following
a jury trial in Berrien Circuit Court, William S. White, J.,
defendant was found guilty of conspiracy to commit arson. The
charges arose out of the burning of a house owned by defen-
dant. While the arson charge at bar arose out of a March 29,
1976, fire which destroyed the house, there was evidence con-

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 413.
[2] 5 Am Jur 2d, Arrson and Related Offenses §§ 7, 10, 46, 47.
   30 Am Jur 2d, Evidence § 1141.
[3] 30 Am Jur 2d, Evidence § 1142.
   Corroboration of extrajudicial confession or admission. 45 ALR 2d
   1316.
[4] 47 Am Jur 2d, Jury § 307.
[5] 75 Am Jur 2d, Trial §§ 481-484.
   Practice and procedure with respect to motions for judgment not-
   withstanding or in default of verdict under Federal Civil Proce-
   dure Rule 50(b) or like state provisions. 69 ALR2d 449.
[6] 5 Am Jur 2d, Arson § 17.
   Vacancy re nonoccupancy of building as affecting its character as
   "dwelling" as regards arson. 44 ALR2d 1456.
[7] 63 Am Jur 2d, Prosecuting Attorneys § 27.
[8] 5 Am Jur 2d, Appeal and Error §§ 601, 602.
[9] 4 Am Jur 2d, Appeal and Error § 18.
[9-11] 21A Am Jur 2d, Criminal Law §§ 717, 718, 953.
   81 Am Jur 2d, Witnesses § 8.
   Sufficiency of evidence to support or require finding that out of
   state witness in criminal cases is "material witness" justifying
   certificate to secure attendance under Uniform Act to Secure the
   Attendance of Witness from Without a State in Criminal Proceed-
   ings. 12 ALR4th 742.
   Uniform Act to secure attendance of witness from without a state
   in criminal proceedings. 44 ALR2d 732.
[12] 5 Am Jur 2d, Appeal and Error § 891.
[13] 21A Am Jur 2d, Criminal Law §§ 853, 856, 872, 873.

cerning a March 13, 1976, fire which damaged but did not totally destroy the house. Defendant appeals. *Held:*

1. There was sufficient evidence adduced at the preliminary examination to establish the reasonable belief that a dwelling house had been burned as a result of an intentional criminal act and that defendant committed that act. Defendant's statements made before the fire at issue were properly considered to establish the corpus delicti of the arson charge. The examining magistrate properly bound defendant over on the arson charge.

2. The trial judge properly refused to exclude a juror on the basis that the juror had served on another jury panel within the prior year. The statute which excludes from jury service persons who have served on another jury during the preceding year merely prohibits a person from being part of a jury array in more than one jury term in any one-year period rather than prohibiting a juror from sitting on more than one jury panel drawn from the jury array during the term of that array.

3. The trial court properly denied defendant's motion for a directed verdict of acquittal on the arson charge on the basis that the house was not habitable at the time of the fire at issue, since, viewing the evidence in the light most favorable to the prosecution, the jury could have found the house to be habitable within the meaning of the statute.

4. The defendant has failed to establish that the prosecutor engaged in conduct designed to deny defendant a fair trial or that the nature of the prosecution's conduct was such as to result in manifest injustice.

5. The trial court properly refused to compel the production of certain out-of-state witnesses on behalf of defendant pursuant to the provisions of the uniform act to secure the attendance of witnesses from without a state in criminal proceedings, since defendant's petition was not filed in a timely fashion, did not indicate with a reasonable degree of certainty the exact location of the requested witnesses, and did not make out a prima facie case that the witnesses' testimony would be material.

6. Since defendant did not object to certain of the jury instructions given by the court, reversal on the basis of an appellate claim of improper jury instructions will be granted only if manifest injustice resulted. Reviewing the instructions given as a whole, it cannot be said manifest injustice occurred.

7. Defendant's motion to quash on the basis of the delay between the alleged offense and defendant's arrest was properly denied, since defendant made no showing that the delay preju-

diced his case. Defense counsel's statements are not evidence which will support a showing of prejudice.

Affirmed.

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — PROBABLE CAUSE.

An examining magistrate is to bind a defendant over for trial if it appears that a crime has been committed and there is probable cause to believe that the defendant committed it; probable cause is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged.

2. ARSON — CORPUS DELICTI — PRESUMPTIONS.

The corpus delicti of arson of a dwelling house is established by a showing of the burning of a dwelling house coupled with a showing that the burning resulted from an intentional criminal act; where only a burning of a dwelling house is shown, a presumption arises that the burning was accidentally caused (MCL 750.72; MSA 28.267).

3. CRIMINAL LAW — CORPUS DELICTI — EVIDENCE — CONFESSIONS.

An extrajudicial confession of an accused may not be used to establish the corpus delicti of a crime; however, statements made by the accused prior to the commission of the crime may be used to establish the corpus delicti of the crime.

4. JURY — JURY QUALIFICATIONS — STATUTES.

The now-repealed statute which disqualified from jury duty those persons who had served upon a jury within the prior year did not disqualify a person from sitting upon more than one jury panel during his term as a juror but rather was intended to prohibit a person from being called to serve on more than one jury array during any one-year period (MCL 600.1306; MSA 27A.1306).

5. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL.

When ruling on a motion for a directed verdict of acquittal, a court must consider the evidence which had been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

6. ARSON — DWELLING HOUSE.

Conviction for burning a dwelling house must be founded upon

the burning of a structure that could reasonably be presumed to be a place of human habitation; an unoccupied building must be a structure that could reasonably be presumed to be a place capable of being dwelt in or lived in to qualify as a dwelling house within the meaning of the statute (MCL 750.72; MSA 28.267).

7. CRIMINAL LAW — PROSECUTOR'S DUTY — VOLUNTEERED ANSWER.

A prosecutor has the duty to see that the defendant has a fair trial and must refrain from injecting unfounded prejudicial innuendo into the proceedings; however, an allegedly improper voluntary and unresponsive answer by a witness for the prosecution does not, in itself, establish a basis for finding that the prosecutor was attempting to deny the defendant a fair trial.

8. APPEAL — CRIMINAL LAW — MANIFEST INJUSTICE.

Absent a showing of manifest injustice appellate review of an issue concerning allegedly prejudicial testimony elicited by the prosecuting attorney is precluded where a defendant failed to object at trial to the testimony.

9. WITNESSES — CRIMINAL LAW — ATTENDANCE OF WITNESSES — APPEAL.

A motion to compel the attendance of an out-of-state witness at a criminal trial pursuant to the uniform act to secure the attendance of such witnesses is addressed to the discretion of the trial court and the trial court's determination will not be reversed on appeal absent an abuse of discretion (MCL 767.93; MSA 28.1023[193]).

10. WITNESSES — CRIMINAL LAW — ATTENDANCE OF WITNESSES.

The provisions of the uniform act to secure the attendance of witnesses from without the state in criminal proceedings may be invoked by a defendant (MCL 767.91 *et seq.;* MSA 28.1023[191] *et seq.).*

11. WITNESSES — CRIMINAL LAW — ATTENDANCE OF WITNESSES.

A motion to secure the attendance of a witness pursuant to the provisions of the uniform act to secure witnesses from without the state in criminal proceedings is properly denied where a defendant in his petition has failed to designate with a reasonable degree of certainty the exact location of the witness, has failed to make out a prima facie case that the witness's testimony is material or has failed to bring the petition in a timely manner (MCL 767.91 *et seq.;* MSA 28.1023[191] *et seq.).*

12. Criminal Law — Jury Instructions — Appeal.

    Failure to object to the instructions to the jury in a criminal case waives appellate review unless manifest injustice could occur.

13. Criminal Law — Speedy Trial — Evidence.

    A motion to quash an information on the basis of delay in bringing the defendant to trial because there was undue delay between the date of the alleged offense and the arrest is properly denied where there is only a statement by defense counsel that prejudice resulted from the delay, since statements by counsel are not evidence and will not support a finding that prejudice resulted from the delay.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John M. Smietanka,* Prosecuting Attorney, and *Angela Baryames,* Assistant Prosecuting Attorney, for the people.

*Sheila Hughes,* for defendant on appeal.

Before: T. M. Burns, P.J., and R. B. Burns and M. J. Kelly, JJ.

M. J. Kelly, J. Defendant was charged with arson of a dwelling house, MCL 750.72; MSA 28.267, and conspiracy to commit arson of a dwelling house, MCL 750.157a; MSA 28.354(1). On October 5, 1978, a jury found him guilty of the conspiracy count, and he was sentenced to 11 to 20 years imprisonment on January 9, 1979. Defendant appeals by right, GCR 1963, 806.1.

Defendant owned a home located at 5856 Paw Paw Lake Road in Berrien County. On March 13, 1976, the building caught fire but was not totally destroyed. According to the evidence, there was considerable indication that the fire was intentionally set. On March 29, 1976, a second fire destroyed the house.[1]

---

[1] Defendant was charged with arson arising out of the March 13, 1976, fire. However, his trial and this appeal concern only the later fire which occurred on March 29, 1976.

At defendant's trial, Detective William Anderson of the Michigan State Police Fire Division testified that he investigated both the March 13 and March 29, 1976, fires. He testified that the natural gas and electrical services were terminated after the March 13, 1976, fire. Anderson opined that the absence of a heating and electrical system coupled with the fact that the fire was ignited in more than one location within the house demonstrated that the fire was caused by arson.

The prosecution presented a number of witnesses who testified concerning the conspiracy count. Wanda Hawks testified that defendant suggested that she buy the house in 1975. According to Hawks, defendant expressed his intent to burn the house and collect the insurance proceeds. She testified that he offered her part of the proceeds if she helped him. She also testified that between the first and second fire, she overheard defendant tell Ronnie Sims that, "he didn't like to go back the second time but the place was a hell of a mess, and that he had to go back". Thomas Reynolds, who rented the house in 1974, testified that defendant offered him $2,500 to burn the house. Reynolds' testimony was corroborated by his wife.

Constance Stroder, who rented the home, testified that defendant requested her to move into a trailer owned by defendant in February, 1976. On March 29, 1976, she observed defendant and his son at a garage located near the trailer. Defendant's son requested a siphon hose, which Stroder gave him. Later that night, she saw someone in the garage. According to Stroder, some two weeks after the second fire, defendant asked her if anyone had spoken to her about the fire. After being told the fire marshall had spoken to her, defendant stated that anyone who got him into trouble would be sorry.

The prosecution also introduced photographs which depicted the condition of the house after the March 13, 1976, fire. Fireman Merle Thurton, an employee of the Coloma Township Fire Department, also testified that if the house were cleaned it would have been habitable after the first fire.

After the prosecutor rested, defendant moved for a directed verdict claiming the prosecutor had failed to prove that the building was a dwelling house. The trial court denied defendant's motion.

Ruby Williams, defendant's ex-wife, testified that she held the deed to the house and had sold it to Ronald Sims on a land contract. She also denied that defendant discussed burning the house with either Reynolds or Sims. Defendant also called a number of character witnesses who testified as to his good character. Finally, defendant testified in his own behalf and denied any involvement in a conspiracy to burn the home. After the jury was instructed, it returned a guilty verdict on the conspiracy count.

## I

Defendant argues that the magistrate erred when he bound defendant over for trial on the arson charge. According to defendant, the prosecutor failed to show the corpus delicti of arson during the preliminary exam.

In *People v Goode,* 106 Mich App 129, 136; 308 NW2d 448 (1981), this Court stated:

"An examining magistrate is to bind a defendant over for trial if it appears that a crime has been committed and that there is probable cause to believe that the defendant committed it. MCL 766.13; MSA 28.931, *People v Asta,* 337 Mich 590, 609-610; 60 NW2d 472 (1953).

While positive proof of guilt is not required, there must be evidence on each element of the crime charged or evidence from which those elements may be inferred. *People v Oster,* 67 Mich App 490, 495; 241 NW2d 260 (1976), *lv den* 397 Mich 848 (1976). Probable cause is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that a person accused is guilty of the offense with which he is charged. *People v Dellabonda,* 265 Mich 486, 490; 251 NW 594 (1933). A magistrate's determination at the preliminary examination should not be disturbed unless a clear abuse of discretion is demonstrated. *People v Doss,* 406 Mich 90, 101; 276 NW2d 9 (1979)."

In order to establish the corpus delicti of arson of a dwelling house, the prosecutor must show not only a burning of a dwelling house but also that the burning resulted from an intentional criminal act. MCL 750.72; MSA 28.267, *People v Lee,* 231 Mich 607, 611-612; 204 NW 742 (1925). Where only a burning is shown, a presumption arises that it was accidentally caused. *Id.,* 611-612.

When establishing the corpus delicti of a crime, the extrajudicial confessions of the accused cannot be used. *People v Allen,* 91 Mich App 63, 66; 282 NW2d 836 (1979). However, statements made by the accused prior to the time the crime was committed do not amount to confessions because, at the time they were made, no crime had yet been committed. *Id.,* 66. Therefore, statements made prior to the time the crime was committed may be used to establish the corpus delicti of the crime. *Id.,* 66-67.

In this case, the defendant argues that the prosecutor failed to show that the burning resulted from an intentional criminal act. During the preliminary examination, Detective Anderson opined that the source of ignition was from a human

agent because of the absence of an accidental source. Wanda Hawks also testified that she overheard defendant and Sims state that the "house would have to go again". This conversation occurred between the first and second fires. These facts presented a reasonable ground of suspicion warranting a cautious man to believe defendant committed the crime. The magistrate did not abuse his discretion when he bound defendant over for trial.

## II

Defendant next contends that the trial court erred when it refused to exclude a juror for cause where the juror had served on another jury during the same term. MCL 600.1306; MSA 27A.1306, which was in effect at the time of defendant's trial, prohibited a juror who had sat as a petit or grand juror during the previous year from sitting on another jury panel. The Supreme Court in *Burden v People,* 26 Mich 162 (1872), interpreted a predecessor statute containing the same one-year requirement. The Court held that the one-year provision did not prohibit a juror from serving on more than one jury during the same term. *Id.,* 164-165. In this case, the juror stated that he had sat on another jury during the same term. The trial judge did not err when he refused to excuse the juror for cause.

## III

Defendant's next claim of error concerns the trial court's refusal to grant a directed verdict on the arson of a dwelling house charge. According to defendant, the prosecutor had failed to establish that the house was fit for habitation.

In *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), the Supreme Court stated the test for reviewing motions for a directed verdict:

"In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, *Garcia, supra [People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)], view that evidence in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson, supra [Jackson v Virginia,* 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979)]."

In *People v Reed,* 13 Mich App 75; 163 NW2d 704 (1968), a structure which had previously been used as a dwelling was destroyed by a fire. The evidence presented at trial established that the building was unoccupied and in a dilapidated condition prior to the fire. While the building could have been renovated to make it habitable, this Court reversed defendant's conviction for arson of a dwelling house stating the building was not presently capable of being dwelt in. The Court held:

"Unless a structure is actually being dwelt in or lived in, it would seem that if it is unoccupied it would have to be a structure that could reasonably be presumed to be a place capable of being dwelt in or lived in to qualify as a dwelling house within the meaning of the statute." *Id.,* 79.

A similar result was reached in *People v Foster,* 103 Mich App 311, 316; 302 NW2d 862 (1981), *lv den* 411 Mich 980 (1981).

It is undisputed that the house in question was

unoccupied at the time of the second fire. The evidence presented by the prosecution also established that the natural gas and electrical services to the home were shut off after the first fire. A fireman testified that he guarded the house after the first fire and opined that it was habitable, if it were cleaned up. Finally, the prosecution introduced photographs of the house depicting its condition after the first fire. Considering all the evidence presented by the prosecution up to the time of the motion and viewing it in a light most favorable to the prosecution, a reasonable trier of fact could have found that the essential elements of arson of a dwelling place were proven beyond a reasonable doubt.[2]

## IV

Defendant's fourth allegation of error concerns a claim of prosecutorial misconduct. This claim is based upon a number of answers given by Wanda Hawks concerning her husband's death. While defendant was charged with the 1965 death of Hawks' husband, the prosecutor dropped those charges.

During the prosecutor's examination of Hawks, the following colloquy occurred:

"*Q.* Mrs. Hawks, at the conversation, which you decided not to go along, would you tell us about how that started, and what was said?

---

[2] Later in the trial, after the motion for directed verdict had been denied, defendant introduced evidence which supported a finding that the house was not fit for habitation. However, this evidence could not be considered by the judge while ruling on defendant's motion since it was presented after the judge made his ruling. Defendant failed to renew his motion at the end of his proofs.

"*A.* Well, it was at Rose Cottages. That is where that was.

"We was talking, and I told him—well, he was telling me, you know, when the fire went that he would give me plenty of time to get out of the house.

"And if he came in the house to set the fire, if one of the kids or anyone was in it, they would be dead. This was because he was going—this was because he was not going to go to jail.

"*Q.* What were his exact words?

"*A.* That was the exact words. 'If someone was in the house, when he set it on fire, they would just be dead.'

"*Q.* Okay.

"*A.* I lost my husband that way, and I didn't want to lose my kid that way."

Defendant failed to object to Hawks' comment concerning her husband's death. During defense counsel's cross-examination of Hawks, she again made reference to her husband's death in response to defense counsel's question concerning whether defendant ever threatened her. Defense counsel's objection was sustained and the jury cautioned. Later during cross-examination, Hawks again mentioned her husband's death but this time the trial court overruled defendant's objection. Finally, during redirect examination of Hawks, the following exchange occurred.

"*Q.* You indicated, on cross-examination that is, that, in fact, James had threatened you. Just answer that yes or no.

"*A.* Yes.

"*Q.* Without dealing with the reason for that, did he, in fact, threaten you?

"*A.* Yes, he did.

"*Q.* Regardless of the matter, leaving that aside, what did he say?

"*Mr. Phillipson [defense counsel]:* Your Honor, I object, unless the date is given.

"*Q. [By Mr. Smietanka, Prosecutor]:* All right. When was this said to you?

"*A.* It was in 1965. It was right after my husband was burned to death.

"*Mr. Phillipson:* Oh, your Honor—

"*The Witness:* That is why I can remember the date.

"*The Court:* You asked for it, Mr. Phillipson. She is remembering back to the time, and why she remembered the date."

Defendant also alleges that prosecutorial misconduct occurred during the cross-examination of defense witness Cecil Chapin, a clergyman. The following examination occurred:

"*Q.* You counseled with Wanda, didn't you?

"*A.* Did I counsel with Wanda?

"*Q.* Yes.

"*A.* I talked with her on one occasion, yes, I did.

"*Q.* Was that in 1965?

"*A.* Yes.

"*Q.* Was that when her husband died?

"*A.* It was prior to her husband dying.

"*Q.* While he was still lingering.

"*A.* While he was lingering. That is true.

"*Q.* How did he die?

"*Mr. Phillipson:* Objection, your Honor.

"*The Court:* I will sustain that objection. It is totally immaterial and irrelevant."

It is the duty of the prosecutor to see that the defendant has a fair trial and to protect the interest of the people, who are as concerned with protecting the innocent as they are with convicting the guilty. *People v Brocato,* 17 Mich App 277, 290-291; 169 NW2d 483 (1969). The prosecutor may not inject unfounded prejudicial innuendo into the proceedings. *People v Ball,* 33 Mich App 288, 290; 189 NW2d 816 (1971), *Brocato, supra,* 304. How-

ever, admitting a voluntary and unresponsive answer by a witness does not constitute error. *People v Kelsey,* 303 Mich 715, 717; 7 NW2d 120 (1942), *People v Stegall,* 102 Mich App 147, 151; 301 NW2d 473 (1980).

In this case, the prosecutor did not elicit the initial testimony concerning Hawks' husband's death. The references made during direct, cross- and redirect examination were unresponsive to the questions asked of the witness. Furthermore, defense counsel was subjected to the same type of unresponsive answers. However, the prosecutor did elicit testimony concerning Hawks' husband's death during his cross-examination of Cecil Chapin. On that occasion, the trial court sustained defense counsel's objection. The defendant has failed to show that the prosecutor's conduct was an attempt by the prosecution to deny defendant a fair trial.

Defendant also alleges that a number of questions asked by the prosecution of various witnesses were prejudicial. Defense counsel failed to object to any of the questions. Failure to object at trial prevents appellate review in the absence of manifest injustice. *People v Cleveland Wells,* 103 Mich App 455, 463; 303 NW2d 226 (1981). We find no manifest injustice in this case.

## V

Defendant also alleges that the trial court erred when it refused to compel the attendance of two witnesses, who were in jurisdictions other than Michigan, under the uniform act to secure the attendance of witnesses from without a state in criminal proceedings, MCL 767.91 *et seq.;* MSA 28.1023(191) *et seq.* Four days prior to trial, defense counsel filed a petition requesting the judge

to compel the attendance of Ronald Sims and Don Piker.

The petition stated:

"Ronald Sims is a material witness in the above entitled cause, being the only witness claimed to be present other than the defendant by Wanda Laverne Hawks as to conversations proposed to be introduced into evidence by the prosecutor between March 13 and March 29, 1976."

The trial court denied defendant's petition stating that: (1) the statute for compelling the attendance of an out-of-state witness could only be invoked by the prosecutor; (2) the petition was untimely filed; (3) the petition failed to specify the location of the witnesses; (4) the petition failed to provide for the payment of the witnesses' fees and costs; and (5) the petition failed to show that the witnesses' testimony was material.

MCL 767.93; MSA 28.1023(193) states in part:

"If a person in a state, which by law provides for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state, is a material witness in a prosecution pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to commence, a judge of the court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found."

Rulings under the statute are left to the trial judge's discretion and will not be reversed absent an abuse of discretion. *People v Thornton,* 80 Mich App 746, 752; 265 NW2d 35 (1978). Contrary to the trial judge's ruling in this case, the statute compelling attendance of witnesses in other states may be invoked by defendant. *Id.,* 752.

What information is required to invoke the statute is an issue of first impression in this state. However, a number of other states have analyzed the requirements of the statute. In *Lancaster v Green,* 175 Ohio St 203; 192 NE2d 776 (1963), defendant's petition requesting the attendance of witnesses did not specify the exact location of the witnesses. The court ruled that a defendant must be able, with a reasonable degree of certainty, not only to designate the witness but also the witness's exact location before the court would be required to initiate the complex judicial process required by the act. *Id.,* 205. Furthermore, the petition must be made in a timely manner. See *Commonwealth v Dirring,* 354 Mass 523; 238 NE2d 508 (1968). Finally, the defendant must make out a prima facie case that the witness's testimony is material. *Id.,* 526, *Commonwealth v Edgerly,* 6 Mass App 241; 375 NE2d 1 (1978).

In this case, defendant filed the petition four days before trial. While defendant knew Sims and Piker were important to his case, he waited five months before he filed his petition. This delay made the petition untimely. The petition was also deficient because it failed to specify the exact location of the two witnesses. Finally, defendant never attempted to show that either witness was material. While Sims may have been a material witness, defendant failed to make a prima facie case on this point. His petition alone was not

enough. The trial court did not abuse its discretion when it denied defendant's petition.

## VI

Defendant contends that the trial court failed to instruct the jury that the prosecutor must prove beyond a reasonable doubt that at least one other member of the conspiracy was also guilty. Jury instructions must be reviewed in their entirety. *People v Ritsema,* 105 Mich App 602, 609; 307 NW2d 380 (1981). Defendant's failure to object to instruction waives appellate review unless manifest injustice could occur. *People v Wimbley,* 108 Mich App 527, 536; 310 NW2d 449 (1981).

In this case, defense counsel failed to object to the instructions. After reviewing the instructions as a whole, we cannot say that manifest injustice occurred because the trial court did properly instruct the jury on the elements necessary to convict defendant of conspiracy.

## VII

Defendant's final claim of error concerns the delay between the alleged offense and defendant's arrest. The arson occurred on March 29, 1976, but defendant was not arrested until two years later. According to defendant, this delay denied him due process because it prejudiced him. One day prior to trial, defense counsel moved to have the information quashed because of the delay. During the hearing on the motion, only the statement of defense counsel that defendant was prejudiced was introduced to show prejudice. The statement of defense counsel is not evidence and will not support a finding of prejudice. *People v Rhymes,* 62

Mich App 27, 29; 233 NW2d 171 (1975). In this case, defendant failed to produce evidence showing prejudice during the hearing on the motion. The trial court did not err when it refused to quash the information.

Defendant's conviction is affirmed.