PEOPLE v BURRELL

Docket No. 58485. Submitted July 1, 1983, at Grand Rapids.—Decided August 1, 1983. Leave to appeal denied, 418 Mich 937.

Herman P. Burrell was convicted of armed robbery by a jury in the Kent Circuit Court, Robert A. Benson, J. He appeals alleging that the prosecutor improperly impeached the credibility of a defense witness, Ruby Foster, by suggesting that she regularly testifies for the defense, thus insinuating that she regularly perjures herself. He also alleges that defense witness Lewis Burrell, Jr., was improperly impeached with evidence of an unnamed felony conviction. *Held:*

1. The prosecutor's impeachment technique in regard to witness Foster was impermissible. The prosecutor improperly intimated that he personally believed that Foster had perjured herself on the prior occasions on which she testified, however, there was no evidence presented that she had ever committed perjury.

2. The trial court erred in permitting such improper questioning of witness Foster. Such error was not harmless. The deliberate injection of such error by the prosecutor weighs in favor of reversal. The impermissible attack on Foster's credibility may have convinced one juror to change his or her vote from one to acquit to one to convict the defendant.

3. Lewis Burrell, Jr., was improperly impeached with evidence of an unnamed felony conviction. The trial court's error in overruling defendant's objections thereto was not harmless since such evidence may have been a decisive factor in the mind of a juror who voted to convict the defendant.

Reversed and remanded for a new trial.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 611, 885.

[2] 63 Am Jur 2d, Prosecuting Attorneys § 27.

[3] 81 Am Jur 2d, Witnesses §§ 519, 520.

[4] 5 Am Jur 2d, Appeal and Error § 809.

[5] 29 Am Jur 2d, Evidence § 327.

81 Am Jur 2d, Witnesses § 584.

Cross-examination of character witness for accused with reference to particular acts or crimes—modern state cases. 13 ALR4th 796.

[6] 81 Am Jur 2d, Witnesses § 559.

D. F. WALSH, P.J., concurred in the result and in the determination that it was reversible error to impeach Lewis Burrell, Jr., with evidence of a prior unnamed felony conviction. However, he dissented from the conclusion that it was error resulting in manifest injustice when the prosecutor questioned Ruby Foster as to her prior appearances as a witness for the defense.

OPINION OF THE COURT

1. CRIMINAL LAW — APPEAL — WITNESSES — IMPEACHMENT.

Appellate review of an issue concerning alleged improper impeachment of a defense witness by a prosecutor is precluded absent a showing of manifest injustice where the defendant failed to object at trial to such impeachment.

2. CRIMINAL LAW — PROSECUTING ATTORNEYS.

A prosecutor has the duty to see that the defendant has a fair trial and must refrain from injecting unfounded prejudicial innuendo into the proceedings.

3. CRIMINAL LAW — PROSECUTING ATTORNEYS — WITNESSES — IMPEACHMENT.

An impeachment technique employed by a prosecutor may be found to be impermissible impeachment of a witness where the prosecutor suggested that the witness testifies regularly for the defense thus insinuating that he regularly perjures himself and where the prosecutor, by stating that the witness had testified for the defense at trials where he represented the people, intimated that he personally believed that the witness had perjured himself on those occasions.

4. CRIMINAL LAW — APPEAL — WITNESSES — IMPEACHMENT — HARMLESS ERROR.

The Court of Appeals applies a two-part test in determining whether a trial court's error in permitting a prosecutor's impermissible questioning of a witness was harmless error: (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal, and (2) if not, was the error harmless beyond a reasonable doubt, that is, had the trial been free of the error, is it not reasonably possible that any juror would have voted to acquit; the purpose is to deter prosecutorial misconduct, thus, any error which is deliberately injected by the prosecutor, regardless of the nature or amount of evidence produced against the defendant, weighs in favor of requiring reversal.

5. CRIMINAL LAW — WITNESSES — IMPEACHMENT — UNNAMED FEL-
  ONY CONVICTIONS.

   It is not permissible to permit the impeachment of a witness by
   virtue of evidence of a prior unnamed felony conviction.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY D. F. WALSH, P.J.

6. CRIMINAL LAW — WITNESSES — IMPEACHMENT — MANIFEST INJUS-
  TICE — PRIOR APPEARANCE AS WITNESS — CREDIBILITY.

   *It is not error resulting in manifest injustice for a prosecutor to
   question a defense witness concerning his prior appearances as
   a witness for the defense; the prosecutor has a right to bring
   the fact that a witness regularly appears in criminal cases as a
   witness for defendants to the attention of the jury since that
   fact may affect the credibility given to his testimony.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *David K. Sawyer,* Prose-
cuting Attorney, and *Timothy K. McMorrow,* Chief
Appellate Attorney, for the people.

*George S. Buth* for defendant.

Before: D. F. WALSH, P.J., and R. M. MAHER and
T. ROUMELL,* JJ.

PER CURIAM. Defendant was convicted by a jury
of armed robbery, MCL 750.529; MSA 28.797. Sen-
tenced to from 10 to 20 years imprisonment, he
appeals as of right.

The evidence presented at trial revealed two
versions of the events. According to the testimony
of George Hinson, the complainant, he left the
address of 726 College in Grand Rapids around 4
a.m. on September 7, 1980, and started out in his
car for the home of his girl friend a few blocks
away. While en route, Hinson stopped to pick up a
man who was standing on the street. Hinson had
never seen the man before. During the ride, the
man offered Hinson $2 for gas. He tendered $5 to

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Hinson who then pulled over to make change. At this point, the man attacked Hinson with Hinson's own knife, which had been lying on the console, and made off with Hinson's wallet.

When Hinson picked up his assailant, he had noticed that another individual was observing this event. The day after the attack, Hinson saw this person walking past his house. Hinson stopped him and asked him if he knew the man that he had picked up. He said that the man was the defendant. Hinson did not know the name of this witness and the witness did not testify at the trial. A few weeks later, defendant was arrested.

The defendant also testified at the trial and described the events in question in a different manner. The defendant said that he had been introduced to Hinson several months prior to September 7, 1980. On the night in question, defendant attended a party held in the house at 726 College in Grand Rapids. Various other people were also at the party, including Ruby Foster and Georgia Childrey, defendant's cousins, and Lewis Burrell, Jr., defendant's brother. About 1:30 a.m. George Hinson arrived. Hinson eventually asked defendant if defendant knew where he could get some drugs. Defendant thought he knew where such drugs could be acquired and the two of them left the house together in Hinson's car, heading for the house of the supplier. When they arrived, defendant waited in the car while Hinson completed the transaction. After Hinson returned, the two men drove a few blocks. Hinson then pulled over to inspect his acquisition. Hinson determined that he had not been given what he had expected to receive. Incensed, Hinson demanded that defendant make up the loss. When defendant would not comply, Hinson attacked defendant with his knife

and a struggle ensued. Defendant was eventually able to free himself and he returned to the address on College. Defendant denied taking Hinson's wallet.

Defendant's version of the events which occurred before he left the party was corroborated by the testimony of Foster, Childrey, and Lewis Burrell, Jr.

Defendant raises two issues on appeal.

First, defendant contends that the prosecutor improperly impeached the credibility of defense witness Foster. The cross-examination of Foster began with the following exchange:

*"Q. Ruby, it is nice to see you again. It's been a while since we last met.*

*"A.* Yes, I know.

*"Q. Now Ruby, you testify in criminal cases on a regular basis, don't you?*

*"A.* No.

*"Q. No?*

*"A.* No.

*"Q. Now that is just in all the cases that I get you seem to show up on them.*

*"A.* I only remember one time, that was the first time I ever testified in a courtroom.

*"Q. This is the first time that you were ever testifying for the defendant?*

*"A.* Let me see.

*"Q. Yes.*

*"A.* He was sittin' back there.

*"Q. Well he was in the courtroom then?*

*"A.* Yeah, that was his case, that was the one.

*"Q. There was some other cases, weren't there, Ruby?*

*"A.* I don't know.

*"Q. In fact you testified on a regular basis on behalf of the defense in cases such as this, don't you?*

*"A.* No, I don't." (Emphasis added.)

Defendant did not object and, thus, appellate review is foreclosed absent manifest injustice. *People v Williams,* 114 Mich App 186, 199; 318 NW2d 671 (1982).

In *People v Williams, supra,* p 198, this Court said:

"It is the duty of the prosecutor to see that the defendant has a fair trial and to protect the interest of the people, who are as concerned with protecting the innocent as they are with convicting the guilty. *People v Brocato,* 17 Mich App 277, 290-291; 169 NW2d 483 (1969). The prosecutor may not inject unfounded prejudicial innuendo into the proceedings. *People v Ball,* 33 Mich App 288, 290; 189 NW2d 816 (1971); *Brocato, supra,* 304."

See, also, *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973), and the cases cited therein. In *People v Simons,* 42 Mich App 400; 202 NW2d 575 (1972), the prosecutor impeached a defense witness by inquiring into her alleged acts of marital misconduct. In reversing the defendant's conviction, this Court said:

"It is * * * impermissible to discredit a witness who gives testimony favorable to the defendant by showing that the witness was guilty of misconduct not resulting in convictions." 42 Mich App 404. (Footnote omitted.)

In *People v Kraai,* 92 Mich App 398; 285 NW2d 309 (1979), *lv den* 407 Mich 954 (1980), the prosecutor attacked an alibi witness on the ground that she was remiss in not reporting her knowledge of the defendant's escape to the police. This Court said:

"Discrediting an alibi witness by insinuating her

failure to act as a good citizen is not permissible. *Cf.*
*People v Simons,* 42 Mich App 400; 202 NW2d 575
(1972). Consonant with our duty to maintain the integrity of the trial process, a duty to which the prosecutor
in this case should feel equally dedicated, we cannot
tolerate such unwarranted use of innuendo and tactics
of intimidation." 92 Mich App 411. (Footnote omitted.)

In the present case, the prosecutor, by suggesting that Foster testifies regularly for the defense,
insinuated that she regularly perjures herself.
There was no evidence whatsoever that Foster had
ever committed perjury. The prosecutor's insinuation is all the more damaging because he stated
that Foster had testified for the defense at trials
where he represented the people. Thus, the prosecutor intimated that he *personally* believed that
Foster had perjured herself on those occasions.
The prosecutor committed the same impropriety
that the Supreme Court condemned in *People v
Whalen, supra.* In that case, the prosecutor suggested that two alibi witnesses had a lesbian relationship. The prosecutor had represented successfully the husband of one of the witnesses in a
contested divorce proceeding. During that proceeding the prosecutor had "severely grilled" both alibi
witnesses. The Supreme Court found the prosecutor's tactics to be impermissible:

"The cross-examination by the prosecutor in this case
also had no legal connection with the question being
tried, and the end to which it was obviously directed
was utterly indefensible and resulted in an unfair trial.
* * * It did no more than put in front of the jury the
fact that he, the prosecutor, *personally* felt these witnesses to be of disreputable character and unworthy of
belief. The prejudicial effect of such remarks by * * * a
quasijudicial officer is obvious." 390 Mich 686. (Emphasis in original.)

The prosecutor's impeachment technique in the present case was impermissible. Moreover, the trial court's error in permitting the prosecutor's questioning was not harmless. This Court applies a two-part harmless error test:

"(1) was the error so offensive to the maintenance of a sound judicial system as to require reversal, and (2) if not, was the error harmless beyond a reasonable doubt, that is, had the trial been free of the error, is it not reasonably possible that any juror would have voted to acquit?" *People v Oliver,* 111 Mich App 734, 757; 314 NW2d 740 (1981), *lv den* 414 Mich 970 (1982).

The Court in *People v Oliver, supra,* p 758, went on to say:

"In applying the first part of the test, we note that the nature or amount of evidence produced against the defendant is irrelevant. *People v Christensen,* 64 Mich App 23, 33; 235 NW2d 50 (1975), *lv den* 397 Mich 839 (1976). Its purpose is in part to deter prosecutorial misconduct. *Id.* An error which is deliberately injected into the proceedings by the prosecutor weighs in favor of requiring reversal. *Id."*

Such prosecutorial misconduct was present in this case and weighs in favor of reversal. Moreover, inasmuch as the trial was no more than a credibility battle between the people's witnesses and the defendant's witnesses, the impermissible attack on the credibility of Foster may have convinced one juror to change his or her vote from one to acquit to one to convict. Thus, reversal is required.

Second, the defendant alleges that defense witness Lewis Burrell, Jr., was improperly impeached with an unnamed felony conviction. The record reveals the following colloquy between the prosecutor and the witness:

"*Q.* Now Mr. Burrell, speaking of your word, you have been arrested and convicted on numerous times on numerous offenses, is that correct?

"*A.* No, that is not.

"*Q.* How many times have you been arrested and convicted?

"*A.* One.

"*Q.* What was that?

"*A.* That was back in '76.

"*Q.* That was the only felony offense that you have been arrested and convicted on, Mr. Burrell?

"*A.* Yes, it is."

Defense counsel objected to the use of the witness's prior felony conviction for impeachment purposes. The trial court overruled the objection because the conviction was for a felony.

The trial court erred. It is not permissible to allow "impeachment by virtue of a prior unnamed felony". *People v McBride,* 413 Mich 341, 345; 319 NW2d 535 (1982). Moreover, the error is not harmless. Because the trial was a credibility contest between the witnesses, the improper attack on the credibility of defendant's brother may have been the decisive factor in the mind of a juror who voted to convict. Reversal is required.

Reversed and remanded for a new trial.

D. F. WALSH, P.J. *(concurring in part and dissenting in part).* I concur in the result. I write separately to express my disagreement with the majority's conclusion that it was error resulting in manifest injustice for the prosecution to question defense witness Foster as to her prior appearances as a witness for the defense. If witness Foster regularly appears in criminal cases as a witness for defendants, that fact, it seems to me, would certainly affect her credibility in this case and the

prosecutor had a right to bring that to the attention of the jury.

Because of the mandate of *People v McBride,* 413 Mich 341; 319 NW2d 535 (1982), I agree that it was reversible error to impeach defense witness Burrell with evidence of a prior unnamed felony conviction.