# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIMOTHY MICHAEL SELONKE II,

Defendant-Appellant.

UNPUBLISHED
December 15, 2016

Nos. 327934; 330247
Wayne Circuit Court
LC No. 14-010732-02-FC

Before: SAAD, P.J., and METER and MURRAY, JJ.

PER CURIAM.

Defendant was charged with assault with intent to commit murder, MCL 750.83, armed robbery, MCL 750.529, carjacking, MCL 750.529a, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In April 2015, a jury found defendant guilty of felony-firearm, but was unable to reach a verdict on the remaining three charges, resulting in a mistrial with respect to those charges. On retrial, the jury convicted defendant of the lesser offense of assault with intent to do great bodily harm less than murder, MCL 750.84, and armed robbery, and carjacking. The trial court sentenced defendant to concurrent prison terms of 12 to 20 years each for the armed robbery and carjacking convictions, and 6 to 10 years for the assault with intent to do great bodily harm conviction, to be served consecutive to a two-year term of imprisonment previously imposed for the felony-firearm conviction. Defendant appeals as of right both judgments of sentence, though he has only raised issues relative to the appeal filed in Docket No. 330247. We affirm in both appeals.

At defendant's second trial, the complainant, Bridgette Green, testified that she was driving her boyfriend's vehicle, a Pontiac Bonneville, during the early morning hours of October 14, 2014, when she pulled over to read a series of text messages that she had received on her cellular telephone. After she parked her car in a well-lighted area, another car came flying up the street and stopped, on a slight angle, in front of her vehicle. The front-seat passenger in this vehicle, identified at trial as codefendant Timothy Dooley,[1] got out of the car, approached

---

[1] Defendant and codefendant Dooley were tried jointly, before a single jury. Dooley was convicted of assault with intent to do great bodily harm less than murder, armed robbery, carjacking, and felony-firearm.

-1-

Green's vehicle, and demanded all of her money. When Green did not comply, Dooley hit her in the face and head with a gun in his hand then stated, "Bitch, I'm not playing." When Green begged to go home to her son, Dooley briefly stopped, but then continued the assault after being prompted, several times, by the driver of the car to "kill the fat bitch." Green identified defendant as the driver of the other vehicle. At one point, Dooley announced his intent to take Green's car. As both Dooley and Green reached for the car keys in the ignition, Green stated, "You might as well shoot me because you're not taking the car." At that point, Dooley pointed the gun at Green and fired a shot. Green was not sure that she had been shot, but she slumped over and "played dead." Then she heard approximately four more shots. Although none of the shots struck Green, one did enter the front passenger seat, just below the headrest. Green then heard the other car drive off. Eventually, the police apprehended defendant and Dooley.

As his first issue, defendant argues that the prosecutor engaged in misconduct during closing argument when, despite being ordered by the trial court to avoid the topic, she remarked that a defense witness, Alexis Aguilar, failed to go to the police to report an alleged extortion attempt by Green. Defendant preserved this issue with a timely objection to the prosecutor's remark at trial. This Court reviews de novo preserved claims of prosecutorial error[2] to determine whether the defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). Our review is on a case-by-case basis and the challenged remarks are to be considered in context. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003).

The record reveals that defendant's counsel was the first one to question Aguilar regarding whether she reported Green's alleged extortion attempt to the police. Then, on cross-examination, the prosecutor similarly asked Aguilar, without objection, if she had gone to the police. The prosecution then pursued a different line of questioning with the witness. However, during this questioning, the trial court excused the jury and sua sponte cautioned the prosecutor that it would be improper to insinuate that Aguilar was not being a good citizen when she failed to report her alleged encounter with Green to the police. Later, during her closing argument, the prosecutor made the following remarks, which were immediately followed by an objection from defendant's counsel:

> [*Prosecutor*]: Now, lastly, let's take a look at the one witness, Ms. Aguilar. And, again, this is really where common sense comes in. She claims that Ms. Green tried to shake her down for $1,500 because that $1,500 was taken during the robbery. Had a chance to look at Ms. Green. Does it look like she's rolling around with $1,500 on her?
>
> Claims that the car was taken. The car was never taken. Claims that her cell phone was taken. None of what Ms. Aguilar claims was said by Ms. Green, none of it's true. No money was taken. The phone wasn't taken. The car wasn't taken.

---

[2] See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

And yet this individual, who clearly is a victim of a crime, Ms. Aguilar, because she's, they're trying to extort money from her, she doesn't do anything about it. She doesn't contact the police and say: Wait a minute. I'm a victim. She doesn't ---

*Mr. Goze:* (Interposing) Judge –

*Ms. Towns*: (Interposing) Contact the prosecutor's office, nothing –

*Mr. Goze*: (Interposing) I'm sorry. I have to object. I believe your Honor made a ruling –

*The Court*: (Interposing) I already made a ruling about that. I'll straighten it up when I –

*Mr. Goze*: (Interposing) Thank you.

*The Court*: Give my instructions. Keep moving.

Considering the foregoing, the prosecutor's comments, taken in context, did not deprive defendant of a fair and impartial trial. First, it is arguable whether the prosecutor even violated the trial court's order. The court's admonishment was premised on the holdings in *People Kraai*, 92 Mich App 398; 285 NW2d 309 (1979), and *People v Simons*, 42 Mich App 400; 202 NW2d 575 (1972). In *Kraai*, the prosecutor attacked an alibi witness for failing to report to the police her knowledge of the defendant's escape. This Court held that "[d]iscrediting an alibi witness by insinuating her failure to act as a good citizen is not permissible." *Kraai*, 92 Mich App at 411. In *Simons*, this Court held that "[i]t is also impermissible to discredit a witness who gives testimony favorable to the defendant by showing that the witness was guilty of misconduct not resulting in convictions." *Simons*, 42 Mich App at 404. Consistent with these rulings, the trial court held that it would be impermissible to insinuate that Aguilar was not being a good citizen for not reporting the telephone call to the police. The prosecutor did not violate this directive.

First, the prosecutor never got an opportunity to draw the impermissible inference contemplated by the trial court in its ruling. In her closing argument, the prosecutor initially pointed out all of the discrepancies between Green's trial testimony and what Aguilar claimed Green said during the telephone conversation. The prosecutor then stated, simply and briefly, "She doesn't contact the police." Immediately thereafter, defendant's counsel objected. Because the prosecutor's reference was so brief, and defense counsel promptly interposed, the prosecutor never had the opportunity to insinuate or argue that Aguilar failed in her obligation as a good citizen by failing to go to the police. Moreover, taken in context, the prosecutor's remark was not an attempt to disparage the witness's character or imply that she engaged in uncharged misconduct, but rather, the remark was an effort to establish that Aguilar's testimony regarding the telephone call was not credible because Aguilar's actions were inconsistent with someone who had been criminally propositioned.

Further, to the extent that the prosecutor could be deemed to have violated the trial court's directive, any prejudice from the prosecutor's brief remark was cured by the court's instructions to the jury. "Curative instructions are sufficient to cure the prejudicial effect of most

inappropriate prosecutorial statements." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). The trial court instructed the jury that it could only use evidence when trying to determine if the prosecution had met its burden of proof and that statements made by the prosecutor in her closing argument did not constitute evidence. In addition, the trial court specifically instructed the jury that "it is not permissible to try to denigrate a witness, cut into their credibility, because they chose not to go to the police." Defendant contends that this curative instruction was given to the jurors in a "vacuum," and left the jurors with no context within which to apply the instruction. However, the court's instruction was not as random as defendant would have this Court believe, considering that Aguilar was the only witness questioned about her failure to report anything to the police. In any event, the court's instruction was clear and concise, and it specifically instructed the jury that a witness's credibility could not be damaged simply because she failed to report something to the police. The instruction was sufficient to cure any prejudice that may have inured to defendant as a consequence of the prosecutor's remark.

Lastly, with respect to Aguilar's testimony that she did not go to the police, the fact that defendant opened the door to this line of questioning cannot be ignored. During his direct examination of the witness, defense counsel specifically asked if Aguilar reported Green's alleged extortion attempt to the police. Based on this testimony alone, which was elicited by defendant, the jury could have concluded that Aguilar's claim of extortion was not credible because she did not go to the police. It would be speculative to conclude that the jury was particularly swayed by a very brief comment made by the prosecutor in her closing argument. In general, "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence . . . ." *People v Jordan*, 275 Mich App 659, 666; 739 NW2d 706 (2007).

Next, defendant argues that the trial court erred when it failed to use the Model Criminal Jury Instructions. Defendant, however, did not object to any of the jury instructions at the time they were given. Indeed, when the court specifically asked if there were any questions or objections, defendant's counsel raised one question unrelated to this issue, and then indicated, "[W]e're good, Judge." Because defense counsel expressly approved of the instructions as given, defendant has waived appellate review of any claimed error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Defendant's waiver extinguishes any error. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). Even if the claimed error had not been waived, however, defendant still would not be entitled to any relief because he cannot show plain error that affected his substantial rights.[3]

Defendant correctly notes that in March 2014, MCR 2.512(D)(2) was amended to require that a trial court give the Model Criminal Jury Instructions (1) when they are applicable, (2) when they accurately state the applicable law, and (3) when they have been requested by a party.

---

[3] Because defendant did not object to the jury instructions as given, this issue has not been properly preserved for appellate review. This Court reviews unpreserved claims of instructional error for plain error affecting substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001).

MCR 2.512(D)(2). Defendant has failed to demonstrate that the trial court violated the requirements of MCR 2.512(D)(2), as there is no evidence that defendant requested that the model jury instructions be given. Furthermore, defendant has failed to identify even one model instruction that should have been given, but was not. Instead, defendant simply makes the general assertion that the Model Criminal Jury Instructions should have been given. Consequently, he has failed to establish a plain error.

Ultimately, "a criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (citation and internal quotation marks omitted.) This requires that the jury instructions include "all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). Defendant acknowledges that there were no misstatements of the law and that he cannot articulate the exact nature of any actual prejudice. In light of these admissions, defendant has not established that the trial court's instructions to the jury constituted plain error that affected his substantial rights.

Affirmed.

/s/ Henry William Saad
/s/ Patrick M. Meter
/s/ Christopher M. Murray